[No. C. D. 1014. *En Banc.* September 3, 1959.]

*In the Matter of the Disciplinary Proceeding Against*
MICHAEL F. WARD, *an Attorney at Law.*[1]

*T. M. Royce*, for board of governors.

*Will M. Derig*, for respondent.

[1]Reported in 343 P. (2d) 872.

Donworth, J.—The Washington State Bar Association, by complaint, verified by its president on January 31, 1957, charged respondent, Michael F. Ward, who was admitted to practice law by this court on December 6, 1926, with wrongfully appropriating to his own use, with intent to deprive the owners thereof, certain funds which came into his custody as administrator of one estate (John Paul estate), and as executor of another estate (Josephine Ryland estate).

This complaint, together with a notice requiring respondent to appear and answer the complaint within ten days after service of the documents, was personally served upon respondent in Seattle on February 9, 1957.

Respondent thereafter filed an answer to the complaint in which he admitted the allegations except that, as to the Paul estate matter, he denied that his withdrawal of the funds was done with intent to deprive the owners thereof. With respect to the Ryland estate matter, he denied that the amount withdrawn by him was $21,500 or any sum in excess of $15,000, and again denied wrongful intent.

The board of governors referred the matter to a trial committee, which held a hearing on July 22, 1957, in Seattle. Respondent and his counsel attended this hearing and respondent testified at length concerning the two defalcations mentioned in the complaint. He frankly admitted that he had taken substantial sums of money belonging to each of the two estates (which he had in his custody as a fiduciary) and had used the money in his own business ventures, all of which failed. He lost everything, including his own money.

Respondent testified that he was seventy years of age and had always had a good reputation until he got into his present difficulties. Prior to coming to Seattle, respondent practiced law for five years in Nebraska (where he was elected police judge) and, after service in the first world war, practiced for six years in Wyoming (where he was prosecuting attorney).

In 1926, he began the practice of law in Seattle. In 1936, he acquired a safe-deposit business, known as Guardian

Safe Deposit Vaults, which he and his wife and sons operated. He sold this business in 1953 for $20,000, plus half the rentals for the next two years. He testified, "I came out of the business with pretty nearly $40,000 of my own."

Mr. Ward also engaged in the business of operating a lake resort, with a restaurant and tavern and dancing place, and in conducting a vending-machine business. These were losing ventures. Through these business ventures, he lost not only the money derived from the sale of his safe-deposit business but also the money taken by him from the decedents' estates, which is the subject of these proceedings.

Mr. Ward did not pay his license fees as an attorney in 1956, and on that account has been suspended from the practice of law since then. At the time of the hearing he was employed as a part-time salesman in a store.

At the hearing before the trial committee, there was no dispute of fact as to the vital allegations of the complaint. As stated above, respondent testified in effect that he had misappropriated trust funds belonging to these two estates and had been unable to make restitution (except to the meager extent referred to below).

The trial committee made the following findings relative to the defalcations:

"2. That on the 17th day of July, 1951, Michael F. Ward in proceedings of the Superior Court of the State of Washington in and for King County, entitled 'In the Matter of the Estate of John Paul, Deceased, No. 120287,' was appointed as administrator of said estate, and thereafter qualified as such and was the duly appointed, qualified and acting administrator of said estate.

"3. That thereafter such administrator, Michael F. Ward, received and had in his possession a sum in excess of $4,-000.00 lawful money of the United States, the property of and belonging to the Estate of John Paul and to the heirs of the said John Paul. Michael F. Ward, having said money in his possession as such administrator, wrongfully, without order or authority, appropriated said funds to his own use and with full knowledge and intent of his actions, except that Michael F. Ward secured a court order for withdrawal of $500.00 of said funds only.

"4. That on January 14, 1954, in proceedings in the Su-

perior Court of the State of Washington, in and for King County, entitled 'In the Matter of the Estate of M. C. Josephine Ryland, Deceased, No. 131333,' Michael F. Ward was appointed executor of the estate of M. C. Josephine Ryland, and thereafter qualified as such and was the duly appointed, qualified and acting executor of said estate. That the Will under which said Michael F. Ward was appointed was *not* a non-intervention Will.

"5. Thereafter such executor, Michael F. Ward, received and had in his possession the sum of approximately $21,-000.00 lawful money of the United States, the property of and belonging to the estate of M. C. Josephine Ryland, and to the heirs of M. C. Josephine Ryland. That Michael F. Ward, having said money in his possession as such executor, wrongfully appropriated the same for his own use, with intent to deprive the owners thereof. . . .

"8. That Michael F. Ward, at the time of the foregoing events, was a competent attorney, familiar with the law; that he was not addicted to the excessive use of alcoholics, and that at such time he was not under any physical, mental or financial stress. That he was fully cognizant of his actions.

"9. That Michael F. Ward has been fully cooperative in all of his disclosures to the bonding company, to the local L. A. C. Committee and to the Washington State Bar Association."

Based on these findings, the trial committee made the following recommendation to the board of governors:

"That said Michael F. Ward be permanently disbarred from the practice of law in the State of Washington, as provided by the Rules of Discipline of Attorneys adopted by the Supreme Court of the State of Washington, after due consideration by the Board of Governors of the Washington State Bar Association."

Respondent filed with the bar association his exceptions and objections to the findings and recommendation of the trial committee, the grounds thereof being stated as follows:

"In support of my objections to said phrase [*i.e.*, "with intent to deprive the owners thereof"] wherever the same may appear in these proceedings, I now deny the same, unequivocally, wholly and completely, and allege: that said statement is completely false and untrue.

"That among other assets of the Josephine Ryland Estate were certain U. S. Savings Bonds apprased [sic] at about $5000.00; that until I was succeeded by the A.W.A. and A.D.N. I had all said bonds in my possession and under my control and could have cashed the same at any time, under Order of the Court, and used the proceeds of the same had I so wished.

"In view of the above, and other considerations, I insist that I never, at any time, had any thought or intent to deprive the owners of their property, or any part thereof. My whole life and experience belies the allegations of wrongful intent.

"The money I withdrew from the estates in question went into business ventures of mine which ended in complete disaster to myself. In fact I lost some $30,000.00 of my own funds in said ventures. In this connection, I freely admit that the taking of these funds was wrong 'per se'. That I expect to be punished for my acts.

"Reference is made to the allegation that I withdrew $21,500.00 in cash from the Josephine Ryland Estate, whereas, the cash in this estate did not exceed the sum of $16,500.00; while I realize this is but a matter of degree, yet I desire that you try me on the facts as they exist."

The record was submitted to, and was considered by, the board of governors (except the member who had presided as chairman of the trial committee). The board's findings and recommendations submitted to this court are:

"The board accepted and adopted the findings of fact of the trial committee as the findings of fact of the board of governors.

"The board recommends that Mr. Ward be disbarred from the practice of law in the State of Washington."

A hearing upon these findings and recommendations was had before this court sitting *en banc* on June 24, 1959. Due notice thereof was given respondent by the clerk of this court, as required by Rule for Discipline of Attorneys 44, 34A Wn. (2d) 196.

Respondent filed no brief, but appeared in person and addressed the court in his own behalf. Counsel for the bar association filed a brief and argued the cause.

Since there were no material issues of fact presented to the trial committee or the board of governors, the findings

must be accepted by us as verities. The question then is whether this court should follow the recommendation of the board that respondent be disbarred.

The ultimate facts (which respondent has frankly admitted) are that respondent, while acting in a trust capacity, has embezzled substantial amounts of trust funds which were in his custody.

In connection with our problem in determining whether he should be permanently disbarred or should be suspended from practicing law for a fixed period, respondent calls our attention to his efforts to make restitution and his desire to be permitted to practice law so that he may be able to fully restore to the owners the funds he has misappropriated.

Since he lost all his financial resources and was suspended from practicing because of delinquency in his dues, respondent has been employed as a clerk in a store. The sureties on his two bonds were compelled to pay to the two estates the respective amounts of his defalcations up to limits of their liability. Since January, 1957, respondent has paid the sum of one hundred dollars per month to the attorney for one of the surety companies involved. This amount has been divided between the two sureties. We note in the file a letter from this attorney addressed to respondent's counsel under date of June 9, 1959, in which it is stated that these monthly payments have been made by respondent each month (except two when respondent was ill) and that they then totaled $2,500.

We have taken into consideration all the factors, both favorable to respondent and unfavorable to respondent. Among the former are: (1) an honorable career for some sixty-five years prior to committing the acts here complained of, (2) his frank and voluntary disclosure to the sureties on his bonds when full restitution appeared impossible, and (3) his sincere desire to make token payments in restitution as evidenced by his paying one hundred dollars per month to the sureties, and (4) his frank admissions to the trial committee and his refraining from making excuses or blam-

ing other persons for his serious acts of recreancy to his trust.

■ On the other side of the ledger is the stark fact that respondent, an attorney, acting in a fiduciary capacity, has embezzled a total sum of not less than $20,000. In so doing, he has violated Rule for Discipline of Attorneys 10, 34A Wn. (2d) 183 (subdivisions 6 and 11), specifying causes for reprimand, suspension and disbarment.

Subdivision 6 provides:

"For the commission of any act involving moral turpitude, dishonesty, or corruption, whether same be committed in the course of his relations as an attorney or counselor at law, or otherwise, and whether the same constitute a felony or misdemeanor or not; and if the act constitute a felony or misdemeanor, conviction thereof in a criminal proceeding shall not be a condition precedent to disbarment or suspension from practice therefor."

Subdivision 11 makes a violation of the ethics of the profession a cause for such disciplinary action. Canon of Professional Ethics 11, 34A Wn. (2d) 129, adopted by this court as part of the code of ethics for members of the bar of this state, provides:

"The lawyer should refrain from any action whereby for his personal benefit or gain he abuses or takes advantage of the confidence reposed in him by his client.

"Money of the client or collected for the client or other trust property coming into the possession of the lawyer should be reported and accounted for promptly, and should not under any circumstances be commingled with his own or be used by him."

■ The functions and duties of this court in respect to disciplinary matters is well stated in *In re Steinberg*, 44 Wn. (2d) 707, 269 P. (2d) 970 (1954), as follows:

"Some regulation of the professional and personal lives of lawyers is necessary to preserve public confidence in the judicial institution and to protect the courts and public from misconduct. In this jurisdiction, the standard which must be met by those practicing law is set forth in the Canons of Professional Ethics. 34A Wn. (2d) 124 *et seq.* The method by which those standards are enforced is found in Rules for Discipline of Attorneys. 34A Wn. (2d) 177 *et seq.*

"There is a significant difference between the various sanctions available to deal with misconduct. Rules for Discipline of Attorneys, Rule 10 (34A Wn. (2d) 183), provides that an attorney may be reprimanded, suspended, or disbarred. The basic reason of all disciplinary action—reprimand, suspension, or disbarment—is broad. It is for the protection of the public. It is to preserve public confidence in the judicial system and protect it from misconduct. We said in *In re Little*, 40 Wn. (2d) 421, 431, 244 P. (2d) 255 (1952):

" 'The final adjudication should provide neither more nor less than the facts fairly require to penalize the offender, deter others, and indicate to laymen and members of the bar that proper discipline will be enforced and the standards of the profession maintained.'

"One need but examine the former opinions of this court to find that there is no fixed standard by which the result of a disciplinary proceeding can be determined. This court has disbarred an attorney for commission of acts involving moral turpitude (*In re Durham*, 41 Wn. (2d) 609, 251 P. (2d) 169 (1952)); and has disbarred an attorney for a violation of the Canon of Ethics (*In re Arctander*, 110 Wash. 296, 188 Pac. 380 (1920)).

" 'The action to be taken rests within the sound discretion of the court. This discretion is wide, and, as is true in every instance where it has no well-defined boundary, it must be exercised with extreme care and caution to avoid its abuse. Its limits in each case are determined by the evidence then before the court.' *In re Little, supra* (p. 431).

"In the exercise of our wide discretion to accomplish and satisfy the objectives and reasons for all disciplinary actions, there is an equal and opposite effect exercised upon the person whose conduct is under examination. The seriousness of the effect upon the individual is in direct proportion to the mode of discipline which is determined. While a simple reprimand may be humiliating to the person receiving it, its consequences cannot be compared with the severity of loss of livelihood which is a result of disbarment. Whether it be reprimand, suspension, or disbarment,

" 'Its consequence is punitive, unavoidably so, despite the fact that it is not designed for that purpose.' *In re Little, supra* (p. 430)."

As stated in *In re Beakley*, 6 Wn. (2d) 410, 107 P. (2d) 1097 (1940), the question which each judge of this court

must answer in deciding what type of discipline should be given respondent in this case is:

"Can I, in view of what has been clearly shown as to this man's conduct, conscientiously participate in continuing to hold him out to the public as worthy of that confidence which a client is compelled to repose in his attorney?"

In the following recent cases where similar acts have been committed by attorneys, we have been constrained to answer this question in the negative: *In re Dillard*, 48 Wn. (2d) 376, 293 P. (2d) 761 (1956); *In re Park*, 45 Wn. (2d) 383, 274 P. (2d) 1006 (1954); *In re King*, 42 Wn. (2d) 617, 257 P. (2d) 219 (1953).

Our consideration of the undisputed facts presented in the record before us convinces us that we must reach the same conclusion in the present case.

Consequently, the findings and recommendations of the board of governors are in all respects approved and confirmed.

It is, therefore, hereby ordered that respondent, Michael F. Ward, be, and he hereby is, permanently disbarred from the practice of law in the state of Washington and that his name be stricken from the roll of attorneys.

ALL CONCUR.