[No. C. D. 2980.  *En Banc.*  April 27, 1961.]

*In the Matter of the Disciplinary Proceedings Against*
JOSEPH H. GRIFFIN, JR., *an Attorney at Law.**

*T. M. Royce,* for Board of Governors.

*Stuart W. Todd,* for Joseph H. Griffin, Jr.

WEAVER, J.—The board of governors of the Washington State Bar Association has presented for final disposition its recommendation that respondent Joseph H. Griffin, Jr., be disbarred from the practice of law in this state. The recommendation confirms the report of a trial committee.

The recommended disbarment is based upon the following:

(a) Canons of Professional Ethics, Canon 11, RCW, Vol. 0:

" . . . Money of the client or collected for the client or other trust property coming into the possession of the lawyer should be reported and accounted for promptly, and should not under any circumstances be commingled with his own *or be used by him.*" (Italics ours.)

(b) Rules for Discipline of Attorneys, Rule 10, RCW, Vol. 0 (effective January 2, 1951):[1]

*Reported in 361 P. (2d) 569.

[1] New rules for Discipline of Attorneys were adopted November 2, 1960, effective January 2, 1961. RCW, Vol. 0.

"An attorney or counselor may be . . . disbarred for any of the following causes:

" . . .

"(6) For the commission of any act involving . . . dishonesty . . .

" . . .

"(11) Violation of the ethics of the profession. The Code of Ethics adopted by the Supreme Court of the State of Washington shall be the standard of ethics for the members of the bar of this state."

December 5, 1952, respondent was appointed guardian of his minor son and daughter, who, as beneficiaries and devisees of their paternal grandfather, were entitled to (a) the proceeds of a life insurance policy; and (b) a remainder interest in certain real property. The order appointing respondent guardian did not require him to post bond until the property in which the minors had an interest was delivered to him. No bond was ever filed.

August 6, 1953, respondent received a check for $500, part of the $3,809.98 life insurance proceeds, from the bank executor of his father's estate. He deposited the check in the same bank in the name of the children, subject to his withdrawal. The evidence supports the finding that, without authorization or approval of the court, this fund was used by respondent to pay dental and medical expenses, life insurance premiums, and transportation for his son. September 12, 1958, the balance in this account had been reduced to $.75.

February 25, 1954, respondent received a check for $3,309.98 from the executor of his father's estate. This was the balance of the life insurance proceeds, payable to him as guardian of his minor children. He deposited $2,509.98 in a savings bank, in his name, as a "trust account." He kept the balance of $800, but made no accounting except a statement that it was used for "family expenses."

November 3, 1954, respondent petitioned the court to sell the minors' remainder interest in the real property. He reported $4,000 in a trust account—a deliberate untruth. He had received $3,809.98, not $4,000. On that date, the trust

account in the savings bank was $112.82; the balance of the original $500 checking account was $150.

Having been authorized to sell the minors' interest in the real property, he deposited, on December 23, 1954, the sale price—$15,960.34—*in his law office account.*

Most of the funds in the minors' checking and trust accounts (except identified payments for the son's benefit, to which we have referred) were either transferred to respondent's law office bank account or withdrawn for unexplained reasons. By November 3, 1955, respondent's law office checking account was overdrawn $8.02.

Following a routine check of King county probate records, respondent was asked to report to a judge of the superior court to explain apparent deficiencies in the guardianship. He reported promptly, disclosed that the assets of the guardianship had been dissipated, offered to resign as guardian and to do whatever the court indicated.

September 25, 1958, letters of guardianship were issued to David C. Hunter. Respondent co-operated with his successor-guardian; he delivered to him bank books, bank statements, cancelled checks, and $13.57—$12.82 was in the minors' savings account and $.75 in the checking account.

From the records delivered to him, the guardian determined that respondent had commingled and used $18,970.32 of the minors' funds. March 5, 1959, respondent executed and delivered his installment promissory note for this amount to the guardian. One hundred dollars has been paid on the note. In addition, respondent executed an assignment of "any gifts, devises, bequests or inheritances to which he is now entitled or to which he may in the future become entitled."

One item in the account is most puzzling. It discloses that respondent loaned $4,000 of the trust funds to another lawyer. Respondent testified that he "took a note and mortgage on their property." They were not produced. He testified that the money was repaid, but

"Apparently it was not deposited in any of the accounts that I had or in any savings institution."

The guardian and his counsel have been diligent. Two lawsuits having been authorized against the bank and the grantees of the minors' remainder interest in the real property; the guardian, by compromise settlement, has recovered the sum of $16,500. The parties contributing to the settlement were subrogated to the interest of the guardian in the $18,970.32 promissory note executed by respondent.

The minors have lost the difference between the amount to which they were entitled and the amount of the settlement, plus counsel fees for the litigation. There is, of course, a possibility of further recovery in their behalf by reason of the assignment made by respondent.

The record establishes the facts as we have set them forth. They support the conclusion that respondent commingled trust funds and used them, and that he committed a serious violation of the ethics of the legal profession, all in violation of his oath, professional responsibilities, and the Canons of Professional Ethics.

We adopt the recommendation of the board of governors of the Washington State Bar Association that respondent be disbarred from the practice of law.

It is so ordered.

ALL CONCUR.