[No. C.D. 4463.   En Banc.   October 26, 1978.]

*In the Matter of the Disciplinary Proceeding*
*Against* RICHARD S. CARY, *an*
*Attorney at Law.*

*Jack J. Cullen,* for Bar Association.

*Ritchie & Thurston,* by *John G. Ritchie,* for respondent.

HAMILTON, J.—This case is a disciplinary matter involving an attorney, Richard S. Cary (respondent). The Disciplinary Board of the Washington State Bar Association has recommended he be disbarred.

We concur and adopt the board's recommendation.

Respondent was admitted to the practice of law in Washington State on September 14, 1955. At all times since he has engaged in the practice of law in King County, Washington.

The will of respondent's grandfather created a certain trust fund in the state of New York. Respondent and his two sisters were the named remainder persons of this trust. Sometime prior to the death of the life tenant, respondent was appointed by the Surrogate Court of New York as successor trustee of the fund which consisted of units of investment in Security Equity Fund, a mutual fund. Its value was approximately $23,500.

The life tenant of the trust died a resident of California on December 25, 1973. In May 1974, respondent, acting in his capacity as trustee, ordered and in some undisclosed

fashion accomplished liquidation of the assets held in trust without either the approval of the Surrogate Court or the knowledge or consent of his sisters. He then deposited the liquidated proceeds in his attorney's trust account and considered terminating the trust. In order to formally do so without submitting a final accounting to the New York courts, it would have been necessary to have the consent of the various persons who might claim an interest in the fund, *i.e.*, his sisters' and the executor of the deceased life tenant's estate. Respondent sought the necessary consents, but was unsuccessful. Thus, the liquidated funds languished in respondent's trust account.

Then, in late 1974, respondent formed and was principal shareholder of a zinc mining corporation. This activity consumed much of respondent's time and by January 1975 he was working full time at the site of this venture. In February 1975, faced with a serious cash flow problem at the mine, respondent withdrew from his trust account and used all the trust funds which were the proceeds of the liquidated trust assets. Respondent's sisters, who resided outside Washington State, neither gave permission nor had knowledge of respondent's action. In fact, by a letter, which respondent indicated was dated February 27, 1975, he intimated to his sisters that the trust assets were intact and still held in New York State.

Within a very short time, respondent's mine corporation failed and his sisters became aware that the trust funds were lost in the mining venture. The sisters evidently contacted an out-of-state attorney who in turn contacted the Washington State Bar Association. The attorney did not lodge a formal complaint against respondent; rather, he inquired whether the sisters might recover any of the lost funds through Washington's client security fund.

The bar association then began its inquiry into the entire matter. As a result of its inquiry, it filed a formal complaint alleging respondent violated the rules of professional conduct by commission of an act involving moral turpitude.

Respondent readily admits that some degree of moral turpitude is involved in his diversion of the funds. However, he points out he has made efforts to repay his sisters; he has practiced law 22 years and he has never been subject to discipline. Further, he notes he did not use a client's funds but rather his sisters' funds with whom there was no attorney–client relationship.

Respondent's familial relation to the other remainder persons of the trust does not alter the ethical standards and responsibilities which he, as an attorney, was sworn to uphold. Acting, as he was, in a fiduciary relationship to his sisters, he owed to them, as beneficiaries of the trust, the highest degree of good faith, care, loyalty, and integrity, as well as the obligation to fully, timely, and honestly inform them of all facts which would aid them in protecting their respective interests. *Esmieu v. Schrag,* 88 Wn.2d 490, 563 P.2d 203 (1977). Respondent did not fulfill his responsibilities. Instead, he liquidated the trust assets and thereafter converted over $15,000 of his sisters' funds without their knowledge or consent.

Furthermore, respondent misused and abused his attorney's trust account. Such an account is required and maintained by an attorney for the separate deposit and accounting of clients' or beneficiaries' funds coming into his hands. The nourishment of public trust and confidence in the legal profession, as well as our legal system, demands the utmost fidelity of the attorney with respect to his trust account. In no fashion can the personal invasion of the funds of others deposited in such an account be condoned, justified, or rationalized, whatever the personal urgency of the moment may appear to be, or however faithful to his trust an attorney has been in the past.

Clearly, respondent has violated DRA 1.1(a) and (i), which provide:

An attorney at law may be subjected to the disciplinary sanctions or actions set forth in Rule 1.2 for any of the following causes, hereinafter sometimes referred to as violations of the rules of professional conduct:

(a) The commission of any act involving moral turpitude, dishonesty, or corruption, whether the same be committed in the course of his or her conduct as an attorney, or otherwise, and whether the same constitutes a felony or misdemeanor or not; . . .

. . .

(i) Violation of the Code of Professional Responsibility of the profession adopted by the Supreme Court of the State of Washington.

Inescapably, his violations involve moral turpitude and render discipline appropriate.

■■ We have frequently stated that the basic and underlying purposes of discipline are protection of the public and preservation of confidence in the legal profession as well as the judicial system. *In re Krogh,* 85 Wn.2d 462, 536 P.2d 578 (1975); *In re Smith,* 83 Wn.2d 659, 521 P.2d 212 (1974). In determining the measure of discipline, we should consider (a) the seriousness and circumstances of the offense, (b) avoidance of repetition, (c) deterrent effect upon others, (d) maintenance of respect for the honor and dignity of the legal profession, and (e) assurance that those who seek legal services will be insulated from unprofessional conduct. *In re Krogh, supra; In re Smith, supra.* Restitution and repentance following a violation of ethical duty, while commendable, do not constitute a defense. *In re Pennington,* 73 Wn.2d 601, 606, 440 P.2d 175 (1968).

The accepted findings of the Disciplinary Board, as well as the evidence adduced at the disciplinary hearing, amply demonstrate respondent's grave lack of professional responsibility. His flagrant breach of fiduciary duty and disregard for the sanctity of his attorney's trust account, occasioned by a cash flow problem in a mining venture, is hardly conduct befitting an attorney.

■ We have considered the purposes of discipline, as well as the criteria for setting its measure. As stated in *In re Ward,* 54 Wn.2d 593, 601, 343 P.2d 872 (1959), where we quoted from *In re Beakley,* 6 Wn.2d 410, 107 P.2d 1097 (1940), the question each justice of this court must now answer is:

"Can I, in view of what has been clearly shown as to this man's conduct, conscientiously participate in continuing to hold him out to the public as worthy of that confidence which a client is compelled to repose in his attorney?"

We were constrained to answer this question in the negative in *Ward*. Later, in the case of *In re Griffin*, 58 Wn.2d 149, 361 P.2d 569 (1961), we also answered the above question negatively. Both *Ward* and *Griffin* involved the misconduct of attorneys who were, like respondent, acting in fiduciary capacities.

Our consideration of respondent's breach of his fiduciary obligations under the facts and circumstances here presented, leads us to conclude we must answer the above question similarly in this case.

Accordingly, upon filing of this opinion, it is ordered that respondent, Richard S. Cary, be disbarred from the practice of law and his name be stricken from the roll of attorneys in this state.

WRIGHT, C.J., and ROSELLINI, STAFFORD, BRACHTENBACH, HOROWITZ, DOLLIVER, and HICKS, JJ., concur.

UTTER, J. (dissenting)—I would prefer an indefinite suspension as a sanction in this case.