[No. 7. *En Banc.* March 12, 1919.]

*In the Matter of the Proceedings for the Disbarment of* E. C. WARD.[1]

ATTORNEY AND CLIENT (6)—DISBARMENT—JURISDICTION TO SUSPEND —STATE BOARD OF EXAMINERS—STATUTES—CONSTITUTIONALITY. Laws 1917, p. 421, giving the state board of law examiners power to examine applicants for admission to the bar, and to investigate the conduct of attorneys, initiate complaints and hear disbarment proceedings, subject to review by the courts, though unconstitutional in so far as it authorizes them to enter judgment of disbarment, is sustainable as to the delegated legislative and administrative functions, and authorizes the board to pass upon the evidence received, and report the same to the supreme court; since the valid is separable from the invalid portions of the act.

SAME (7)—GROUNDS FOR SUSPENSION—EVIDENCE—SUFFICIENCY. An attorney who irregularly receives money as administrator before qualifying, and misappropriates it, but without intent to defraud the estate or bad motive, and repays the same with interest, will not be disbarred, but will be suspended for one year.

Motion filed in the supreme court December 2, 1918, for the disbarment of an attorney at law, upon recom-

[1] Reported in 179 Pac. 76.

mendation of the state board of law examiners. Order of suspension. entered.

*N. B. Brooks, McGill & McKenney,* and *Donald McMaster,* for petitioner.

*The Attorney General* and *R. M. Burgunder, Assistant,* for respondent.

MAIN, J.—This is a proceeding for the disbarment of E. C. Ward, an attorney at law, a resident of, and licensed to practice law in, this state. The proceeding was instituted by a complaint filed with the state board of law examiners, pursuant to ch. 115, Laws of 1917, p. 421. The board of examiners, at a hearing at which the accused attorney appeared, heard the evidence offered in support of and against the charges made in the complaint, and found that one of the charges was well proven, and recommended that an order of disbarment be entered.

The first error assigned challenges the constitutionality of the act under which the proceedings were instituted. This question was met and determined in the case of *In re Bruen,* 102 Wash. 472, 172 Pac. 1152. It was there held that the act was "in all respects constitutional, except the provision for a final order or judgment of disbarment by the board of law examiners." In that opinion the objections now urged were fully discussed and we adhere to the views there expressed.

The cause was first presented to the court during the May term of the year 1918. While the cause was still pending, and before an opinion had been filed, counsel for the attorney against whom the proceeding was brought requested and was given permission to present a motion for the remanding of the case to the board of law examiners, for the taking of additional

testimony. The motion was subsequently made, supported by affidavits. Prior to the hearing on the motion, counsel in the case stipulated that the affidavits filed in support of the motion might be considered by the court as original evidence upon the merits. Upon the record thus made, the cause was again heard and is now before us for final determination.

The charge upon which the board of law examiners recommended disbarment grew out of ·facts, briefly stated, as follows: On the 20th day of November, 1911, one J. A. Gilmore filed a petition in the superior court of Klickitat county, asking for letters of administration upon the estate of Joseph Green, who at the time was supposed to be deceased because he had been absent for more than seven years from Klickitat county, and had not been heard from at all during that time. E. C. Ward appeared as attorney for the petitioner, and the petition prayed for his (Ward's) appointment as administrator. After a hearing upon the petition, the court signed an order making the appointment as requested. After this order had been signed and entered, the administrator named therein went to the referee in another proceeding, in whose possession were funds belonging to the estate of Joseph Green, and requested that such funds be paid over to him as such administrator. He at that time represented that he was the administrator of the estate. The money, $945.32, was thereupon turned over to him. At this time, the administrator had not qualified by the taking of the oath and the giving of the bond, and no letters of administration had been issued. After the money was paid over, the administrator, with the consent and approval of one J. A. Gilmore, who was the petitioner in the administration proceedings and the father of two of the heirs of

Joseph Green, attempted to loan the money to himself and used it for his own purposes.

On the 11th day of December, 1914, one of the heirs of Joseph Green petitioned the court that she be appointed administratrix of the estate, setting forth in her petition that the former administrator had never regularly qualified as such. After a hearing upon this petition, Ruby May Yeackel, the petitioner, was appointed and duly qualified as administratrix. Soon thereafter she made demand upon the former administrator for the funds of the estate, a portion of which was presently paid, and the balance had all been paid, together with interest, prior to the hearing before the board of examiners; but a portion thereof had not been paid until after this proceeding had been instituted.

The irregularity was in receiving the money before being duly qualified as administrator and subsequently using it for his own purposes, even though he had the consent of the father of two of the heirs. The most serious fault is the use of the money, and this must be condemned. It is possible that the failure to file the oath and bond was due to an oversight, as claimed by the attorney. The facts stated do not justify the use made of the trust funds. The evidence is not sufficient to show that the attorney, in using the money for his own purposes, intended to defraud the estate and appropriate the money to his own benefit without accounting therefor. We believe that it was his intention to repay the money with interest.

In cases of this character, the motive as well as the act charged should be considered. The fact that the use made of the money was with the consent and approval of Gilmore, as above stated, does not excuse or justify the act, but it has a bearing on the motive.

After reading the entire record as it now is, with care, and giving earnest consideration to all of the evidence, we are of the opinion that, to permanently disbar the attorney and thereby cut him off from the practice of his profession by which he earns his living, would be a more severe punishment than the evidence in the case requires. The ends of justice, as it seems to us, would be better served by a limited disbarment.

It is therefore the order of the court, that the attorney be suspended from the practice of his profession for a period of one year. This time will begin to run thirty days after the filing of this opinion.

CHADWICK, C. J., MITCHELL, HOLCOMB, MACKINTOSH, PARKER, MOUNT, and TOLMAN, JJ., concur.