[No. C. D. 555.    *En Banc.*    October 21, 1940.]

*In the Matter of the Discipline of* C. G. MORAN, *an Attorney at Law.*[1]

*S. M. Brackett,* for the board of governors.

*Charles Gilbert Moran* and *H. Sylvester Garvin,* for respondent.

STEINERT, J.—At the direction of its board of governors, the Washington state bar association filed against respondent C. G. Moran a complaint setting forth nine causes of action for alleged unprofessional conduct. Two supplemental complaints were subsequently filed, each setting forth an additional cause of action. A hearing upon all the charges was duly had before a trial committee of the bar association, at which hearing respondent appeared in person and by counsel. Upon the basis of the testimony adduced, the trial committee made findings of fact sustaining the validity of ten of the causes of action, and recommended that respondent be suspended from the practice of law in the state of Washington for a period of three years, and that he also make full restitution of all sums owing

[1]Reported in 106 P. (2d) 571.

by him as alleged in the several causes of action. Upon review of the matter by the board of governors, it was unanimously resolved (one of the members of the board not participating) that the findings of the trial committee be adopted and approved, but that it be recommended by the board that respondent be disbarred from further practice of law in this state.

Pursuant to Rule XLIV, Rules for Discipline of Attorneys, 193 Wash. 105-a, the cause was entered upon the docket of this court for consideration and disposal. No objections to the findings or to the recommendation of the board were filed by respondent, and the cause was submitted without argument or brief from either party.

The findings are set forth at length and in detail. We limit ourselves to a statement of their substance, in relation to the various causes of action.

I. Respondent borrowed from an attorney the sum of $228 upon the representation that the money was to be used, together with other money, to purchase for a client of respondent certain property from the state tax commission, and upon the promise that he would take title to the property in the name of the lending attorney, and, for the use of the funds, would pay the latter the sum of $40 out of his attorney's fee in the transaction. Upon respondent's failure to take title to the property as agreed, the lending attorney made demand for the return of his money. Respondent thereafter delivered to the lender two checks to cover the above amounts. Both checks were returned by the bank marked "N. S. F." (Not Sufficient Funds). Later, upon threats that complaint would be made to the bar association, respondent paid the amounts of the checks.

II. Respondent instituted an action for a client, upon a contingent fee basis, to recover rent due upon

certain real estate and for the loss of certain machinery. Without the knowledge of his client, respondent obtained judgment in the sum of $15 plus costs amounting to $47.40. Respondent delayed entry of the judgment for a period of nine months, and in the meantime failed to inform his client of the fact that judgment had been granted or of the amount thereof. After collecting the judgment, he failed to report that fact to his client, but repeatedly stated that the matter had not been closed. In the meantime, another year's premium on the cost bond filed in the action became due. At the insistence of the local administrative committee, to whom complaint had been made, respondent filed the judgment, paid the premium on the bond, and settled with his client.

III. Respondent induced a third party to advance the sum of two hundred dollars as one-half of the amount which respondent was to use in bidding in certain property at a tax foreclosure sale. The property was not acquired as contemplated, but despite that fact respondent failed to refund the money to the owner, although frequent demand was made for its repayment.

IV. The fourth cause of action grew out of alleged false representations to a client and an alleged failure to take proper steps in certain litigation. At the conclusion of the testimony upon that charge, the trial committee dismissed the cause.

V. Respondent collected for a client the sum of five hundred dollars upon a sale of certain hotel furniture, but failed to pay over the proceeds to the client, although repeated demands therefor were made. Later, respondent delivered to his client a check for four hundred fifty dollars, which was not paid by the bank because of insufficient funds in respondent's account. Complaint was made to the bar association,

and respondent subsequently repaid the money in installments.

VI. Respondent was employed to probate an estate, the total assets of which consisted of funds in two savings accounts, aggregating $825.16. Shortly after the commencement of the probate proceeding, respondent induced the executor of the estate to withdraw $404.34 of those funds and to deliver that amount to him, out of which he agreed to pay the claims against the estate, including a funeral bill of $150, and the expenses of administration. During the next seventeen months, respondent failed to take any further step in the proceeding, whereupon he was ordered by the local administrative committee to close the estate without delay. He then prepared and filed an inventory, but failed to pay the funeral bill, except by giving a check which was returned because of insufficient funds. He has not since then paid the amount of the check nor taken any further steps toward closing the estate. At the hearing before the local administrative committee, he denied receiving the sum of four hundred dollars from the executor. At the trial of the present proceeding, however, he admitted that his prior statement to the committee was false, and further admitted his fault in the matter.

VII. A mercantile house in Seattle held a judgment against respondent. In an endeavor to obtain a release of certain real estate from the lien of the judgment, respondent submitted to the attorney for the mercantile establishment an instrument purporting to be a transfer of the real estate as of a date prior to the entry of the judgment, when in fact the instrument was prepared and executed subsequent to the judgment.

VIII. Respondent was employed, on a contingent fee basis, to prosecute an action against the city of Seattle for damages to a client's property resulting

from flood waters. A claim was filed, but was refused by the city. In preparing for trial, respondent engaged the services of an expert engineer. The expert's charge for services was fifty dollars. Respondent, without the knowledge of his client, settled the action for less than one-half the amount of the claim. Later, in dividing with his client the amount of the settlement, respondent agreed to pay the expert's charge. This he failed to do, although frequent demand has been made upon him by an attorney representing the engineer.

IX. This cause of action, and the facts with reference thereto, were of the same nature as those in the preceding cause.

X. In April, 1935, respondent procured for a woman client an interlocutory decree of divorce, which was confirmed by a final decree in November, 1935. The interlocutory decree provided for payment of monthly alimony to the client. In April, 1939, respondent, without the knowledge or consent of his client, compromised the amount of the alimony then due and owing, namely $640, for the sum of $425, and at the same time approved an order which was entered in the divorce case relieving the defendant husband therein from the further payment of support money as long as the plaintiff kept the minor child of the parties outside the state of Washington. Respondent failed and neglected to inform his client of the compromise and the order, and failed to answer any of the several letters of inquiry sent him by his client through a firm of attorneys in Montana. Respondent has not accounted to his client for any portion of the $425. It appears that, of that amount, he received $79 in cash and a credit of $346 upon an indebtedness which he then owed to the attorney for the defendant in the divorce action.

XI. In October, 1939, two individuals deposited with respondent the sum of one thousand dollars for the purchase of a tavern, upon condition that a license therefor was obtained by respondent from the state of Washington. The state refused to issue the license, and, accordingly, demand was made of respondent for the return of the money. After several demands, respondent paid the depositors $760, and gave them a check for $233 which was returned because of insufficient funds. He later paid all but $108, which latter amount is still owing to his clients.

These findings, as we have in substance narrated them, are amply supported by the evidence, and for the most part respondent admits the facts and charges involved.

In recommending suspension and restitution instead of disbarment, the trial committee made reference to the strenuous efforts through which respondent had gained his education and had fitted himself to be admitted to the bar in 1922. As pointed out in the committee's recommendation, respondent's present difficulties are the result of his financial condition, occasioned by several unwise investments.

We respect and commend the efforts that respondent made in his endeavor to fit himself for the legal profession, and we sympathize with his unfortunate financial experiences. However, neither our regard for his effort nor our sympathy for his misfortune can either condone the series of acts committed by him or avert the judgment which, in our opinion, the findings compel.

The Code of Ethics of the American Bar Association is made the standard of ethics for the members of the bar of this state. Rule XI (11), Rules for Discipline of Attorneys, 193 Wash. 93-a.

Canon 11, Canons of Professional Ethics, provides:

"The lawyer should refrain from any action whereby for his personal benefit or gain he abuses or takes advantage of the confidence reposed in him by his client.

"Money of the client or collected for the client or other trust property coming into the possession of the lawyer should be reported and accounted for promptly, and should not under any circumstances be commingled with his own or be used by him." 62 Am. Bar. Assoc. Reports, 1109.

Wholly aside from the mandate of the canon, however, every lawyer knows, or should know, that he cannot use, or retain without good and sufficient reason, his client's money, and that he cannot make settlement of his obligations in that regard by the issuance of checks for the payment of which he has insufficient funds on deposit.

We are of the opinion that in this case the recommendation of the board of governors, upon the findings of the trial committee, was justified.

It is therefore ordered that respondent be disbarred from further practice of law in the state of Washington.

ALL CONCUR.