[No. C. D. 4244. *En Banc.* October 14, 1954.]

*In the Matter of Disciplinary Proceedings Against* WILLIAM U. PARK, *an Attorney at Law.*[1]

*A. Vernon Stoneman,* for board of governors.

*Levy Johnson,* for respondent.

[1] Reported in 274 P. (2d) 1006.

HILL, J.—We are called upon to consider the recommendation of the board of governors of the Washington state bar association that respondent be suspended from the practice of law for a period of sixty days, based upon a finding by the trial committee that

". . . the respondent, William U. Park, violated his oath and duties as an attorney and the Canons of Ethics of the profession, particularly Canon No. 11, by his failure to report, account for and turn over to his client the money and property of such client, and by his commingling with his own and converting to his own use the money of his client";

and the further recommendation that respondent receive an additional suspension of thirty days based upon his prior record.

The record of prior disciplinary proceedings against respondent discloses that on three separate occasions complaints have been filed against him, two of which resulted in recommendations of disciplinary action by the trial committee (one for a six months' suspension and the other a reprimand), and the third culminating in a stipulation signed by respondent on September 23, 1941, that

". . . in the event other complaints should be filed against him and should be found meritorious, this stipulation together with Findings of Fact and Recommendation made by the Trial Committee upon previous complaints may be filed with the Supreme Court and that an order may be entered disbarring respondent . . . from further practice of law in the State of Washington and striking his name from the roll of attorneys."

Detailing the facts and circumstances giving rise to the present or previous complaints filed against respondent would serve no purpose. They may be summarized by saying that in periods of dire financial distress he has used small sums belonging to his clients in order to meet the necessary expenses of subsistence, but with the expectation that the money would ultimately be paid over to his clients.

One would be callous indeed who would not view with sympathy and regret the plight of a fellow member of the

bar who, in his declining years (he is now seventy-four), finds that he is no longer able to rely upon the practice of his chosen profession as a means of livelihood and who, under the compulsion of overpowering necessity, appropriates funds which his clients have entrusted to him, in the desperate hope that the future will bring a change of fortune and enable him to make restitution.

We find the following quotation from *In re Beakley*, 6 Wn. (2d) 410, 424, 107 P. (2d) 1097, particularly expressive of the problem with which we are confronted:

"We realize from past experience that whatever action we take in this case, whether by way of disbarment or of suspension, will be criticized by laymen, and even by some members of the bar. It will be said, if disbarment be ordered, that the punishment is too severe, and, if a suspension be ordered, that, considering the respondent's age, it will amount to a disbarment; and in either case, that the difficulty of making a living at the law in these times of economic stress should have been given more weight and consideration."

We there pointed out:

"A plea for mercy must always command a certain amount of respect, but such pleas have no place in a matter of this kind. Neither disbarment nor suspension is ordered for the purpose of punishment, but wholly for the protection of the public. When a matter such as this comes before the court, the question presented is not: What punishment should be inflicted on this man? The question presented to each of its judges is simply this: Can I, in view of what has been clearly shown as to this man's conduct, conscientiously participate in continuing to hold him out to the public as worthy of that confidence which a client is compelled to repose in his attorney? The casual critic has no such personal responsibility."

We might add that the purpose of proceedings of this nature is not solely to protect the public from violations of the trust and confidence which they place in their attorneys, but also to protect and preserve the public confidence in the high professional and ethical standards of those engaged in the practice of law, and to this end our duty ex-

tends not only to the public but to the members of the bar as a whole. *In re Peters*, 73 Mont. 284, 235 Pac. 772 (1925).

It has been suggested that respondent might be permitted to continue the practice of law upon condition that he become associated with a law firm or practicing attorney under a salaried arrangement, thereby eliminating the need and the temptations which have led to his derelictions and achieving the desired protection of the public and of the standards of the bar. We do not think that such a limitation on the right to practice law is practical, or that the requisite standards of professional skill and knowledge can be thus divorced from the requisite moral or ethical standards. Certainly we find no precedent for such a course of action. In short, if we are to uphold public confidence in the high standards of the legal profession we must insist that the members of the bar possess *all* the qualifications necessary to fulfill those standards.

█ In view of respondent's past record and the manner in which he has attempted to carry on the practice of law, we are confronted with the question laid down in the *Beakley* case, *supra,* as a test:

"Can I, in view of what has been clearly shown as to this man's conduct, conscientiously participate in continuing to hold him out to the public as worthy of that confidence which a client is compelled to repose in his attorney?"

Reluctantly, but necessarily, the answer is no. And, as in the *Beakley* case, we are unable to say that the situation will be any different at the end of ninety days, one year, two years, or any definite period of time. Accordingly, we are of the opinion that the ninety-day suspension recommended by the board of governors is not adequate for the protection of the public or the bar, and that this court has no alternative other than to order that respondent be disbarred and that his name be stricken from the roll of attorneys.

In taking this action, we wish to emphasize again that our purpose is not to punish respondent for his misconduct. Were adequacy of punishment to be the criterion in this case, we would readily concur in the recommendation of the

board of governors. Respondent has made restitution, and the humiliation that he has suffered during the course of the disciplinary proceedings is perhaps sufficient punishment. However, our primary consideration here

" . . . is not punishment . . . but rather the fitness of the subject to continue in the practice of law and be held 'out to the public as worthy of that confidence which a client is compelled to repose in his attorney.' " *In re Greenwood,* 22 Wn. (2d) 684, 689, 157 P. (2d) 591 (1945).

ALL CONCUR.

•

---

January 28, 1955. Petition for rehearing denied.