[No. C. D. 2948.  *En Banc.*  May 5, 1960.]

*In the Matter of the Disciplinary Proceedings Against*
Gene F. Peterson, *an Attorney at Law.*[1]

*T. M. Royce,* for Board of Governors.

*Gene F. Peterson, pro se.*

[1] Reported in 351 P. (2d) 533.

FOSTER, J.—In this disbarment proceeding, the board of governors charged the respondent, a member of the bar of this state, with ten specific items of misconduct. The evidence in support of three of the specifications was insufficient, and, in consequence, the board of governors has rec-ommended dismissal, which recommendation the court adopts. On four of the specifications, a reprimand was rec-ommended. A three-month suspension was recommended upon one charge, and permanent disbarment was recom-mended upon two charges.

The findings of the board on the two more serious charges are not only supported by the evidence, but the defense scarcely can be characterized as a denial of the facts; in con-sequence of which, we adopt the recommendation of the board of governors and permanently disbar the respondent from the practice of law in the state of Washington.

In view of this conclusion, a summary of the evidence in support of the four charges upon which the board of gov-ernors recommended only a reprimand would not serve any useful purpose.

■ Respondent represented Eli Jones in a personal in-jury claim against a railroad. Respondent employed a law-yer of high standing and repute to handle Jones's case. The record does not disclose whether an action was begun for the client Jones or whether the settlement was concluded without instituting an action.

For his compensation, the respondent had a contingent fee contract for one third of the recovery. Respondent and the lawyer employed by him recommended that Jones ac-cept a settlement of fifty-five thousand dollars. This he did upon a reduction of the attorneys' fee to eight thousand dol-lars. After the medical expenses were paid, Jones received thirty-eight thousand dollars net.

Whether requested by Jones or whether the respondent volunteered to do so, is a matter in dispute which we need not resolve because in either case the result is the same. In all events, it is certain beyond cavil that the respondent un-dertook to invest or supervise the investment of Jones's

money. This was of the utmost importance to Jones because of his total lack of experience in such matters. Moreover, in the accident he lost both legs and one arm and the other hand.

The money was deposited in a savings bank. Shortly thereafter, the respondent introduced to Jones his friend Stolz.

Stolz induced Jones to loan thirty thousand dollars to the Metropolitan Mortgage and Securities Company of Spokane in return for its written promise to repay the principal with eight per cent interest. For this purpose, the respondent, at Jones's request, withdrew the necessary funds from Jones's savings account. The entire amount, however, did not go to the mortgage company for, from the funds so withdrawn, the respondent purchased a draft or check payable to Stolz in the sum of two thousand dollars for his commission on the transaction. This Stolz split with the respondent. Although the one thousand dollars was paid respondent either on the day of the withdrawal from Jones's savings account or the day after, the board of governors decided that the evidence does not show an advance agreement between Stolz and the respondent to split the commission.

However, respondent never revealed to his client Jones that he had received one half of the commission for obtaining the loan. It was secret. Respondent stoutly maintains that he was under no duty to make this disclosure to his client.

In the oath which respondent took upon admission to the bar, he swore:

"I . . . will accept no compensation in connection with his business except from him or with his knowledge and approval"; Rule for Admission to Practice 6, 34A Wn. (2d) 164.

Canon of Professional Ethics 38, 34A Wn. (2d) 142, is as follows:

"A lawyer should accept no compensation, commissions, rebates or other advantages from others without the knowledge and consent of his client after full disclosure."

In recommending a suspension of but three months ·for this very serious dereliction, the board of governors was much more than lenient. But, because of the respondent's permanent disbarment on two other charges, we need not deal with that matter.

The first charge upon which the board recommended permanent disbarment dealt with the management of an apartment house owned by Jones while Jones was visiting in Texas. Jones left for Texas in March of 1955, and during his absence the respondent undertook to collect the rents, pay the bills and pay the operating costs, and was to remit the balance to Jones in Texas. The exact amount is not clearly shown, but it is undisputed that the respondent did collect the rents beginning with Jones's departure for Texas in March of 1955 until October, 1955. Although the respondent claims to have kept accounts, he was unable to produce them at the hearing or to reveal the substance.

While in Texas, Jones's daughter telephoned the respondent and asked why her father had not received any money, and, not receiving a satisfactory explanation, Jones placed the management of the apartment house in other hands in October, 1955. Upon Jones's return in March, 1956, the two principals computed the rents collected and agreed that the balance due Jones from the respondent was $378.21. Among other items, respondent advised Jones that he had paid Great Western Fuel Company $101.78 for fuel for the apartment house, which representation was false. In July, 1956, the respondent's mother did pay Jones $100. The board finds, and it is supported by the only evidence in the case, that the respondent converted to his own use $378.21 belonging to Jones. Upon this charge the board of governors recommends permanent disbarment, which recommendation the court adopts.

It is due respondent to say that, after the filing of the complaint in this proceeding, he repaid Jones $278.21, but the repayment under such circumstances is not a defense. *In re Moran,* 5 Wn. (2d) 679, 106 P. (2d) 571; *In re Grant,* 4 Wn. (2d) 617, 104 P. (2d) 602; *In re Smith,* 3 Wn. (2d)

455, 101 P. (2d) 311; *In re Gowan*, 104 Wash. 166, 176 Pac. 7.

■ The final charge likewise concerns misappropriation. For the sale of a real-estate contract belonging to Jones, the respondent received $1,075 in January, 1954, which Jones requested the respondent to deposit in his savings account. This he did not do. Instead, respondent asserts, without any corroboration, that he put the money in an envelope which he placed in his box in the vault maintained by the Paulsen building for its tenants.

Sometime in July, 1954, respondent asked Jones if he could borrow the $1,075 until October, 1954, to which Jones assented, and in March of 1955, on the eve of Jones's departure for Texas, respondent gave Jones a note for that amount. No part of that amount has ever been repaid. The board found that respondent had converted to his own use the sum of $1,075 belonging to Jones.

The board recommends permanent disbarment, which recommendation the court adopts. The respondent is permanently disbarred from the practice of law in the state of Washington.

ALL CONCUR.