[No. C.D. 3508.     En Banc.     April 25, 1968.]

*In the Matter of the Disciplinary Proceeding Against,*
*J. B. PENNINGTON, an Attorney at Law.**

*Reported in 440 P.2d 175.

*Robert O. Wells, Jr.,* for Board of Governors.

*Wayne J. Davies,* for respondent.

NEILL, J.—By direction of the Board of Governors of the Washington State Bar Association, a formal disciplinary complaint was filed against J. B. Pennington, an attorney at law residing and practicing in King County.

The first item of the complaint alleged violation of Rules III C, III J and IV G of the Rules for Discipline of Attorneys (now DRA III C, III J and IV G). It was alleged therein that funds were given to Pennington by a client for transmittal to the client's former wife, the funds being child support payments. Pennington commingled said funds with his own money and retained them for his own use. One result of this retention of funds was the issuance of a warrant for the arrest of the client for nonsupport of his children. At the time of the hearing before the court, $530 of the $700 had not been repaid to the client or used as directed.

The second item of the complaint alleged violation of DRA III C and III J in that Pennington undertook the representation of a client with respect to divorce proceedings contemplated by the client. He failed to account to the client for moneys paid to him and to inform the client of the progress of her case.

The third item of the complaint alleged violation of DRA III C and III J in that Pennington undertook the representation of a client with respect to the client's industrial injury, but failed to appeal an order of the Department of Labor and Industries to the Board of Industrial Insurance Appeals within the time allowed for such appeals. One likely result of Pennington's inaction is that his client has been deprived of an opportunity to assert his entitlement to

time loss benefits and the payment of medical and hospital bills.

The fourth item of the complaint alleged violation of DRA III C and III J in that Pennington failed to obtain a receipt from his client for moneys paid to the client by a decedent's estate in payment of the client's creditor's claim against the estate. Pennington's failure to obtain and deliver the necessary receipt allegedly resulted in delay in closing the estate and in additional expense to the estate.

The fifth item of the complaint alleged that the acts and omissions related in the first four items constituted violations of DRA III M in that said acts and omissions evidenced a course of conduct demonstrating unfitness to practice law.

Pennington filed his answer to the complaint. A hearing was then held before a panel of the Washington State Bar Association, at which hearing Pennington was personally present and represented by counsel. Thereafter, the hearing panel filed its findings, conclusions and recommendations, finding substantially the facts as alleged in the complaint as to the first, second and third items. The panel recommended: (1) that Pennington be suspended from the practice of law for 30 days on the first item; (2) that he receive a letter of censure on the second item; (3) that he be suspended from the practice of law for 60 days on the third item; (4) that the 60 days run concurrently with the time of suspension on the first item; and (5) that the fourth and fifth items be dismissed.

Pennington did not file a statement in opposition to such findings. The Board of Governors approved the findings, conclusions and recommendations and has adopted them as its own.

■ A review of the record of this case indicates that the findings adopted by the Board of Governors are amply supported by the evidence. We do not, however, agree that the recommendation made by the board with respect to the first item of the complaint is commensurate with the seriousness of the violation of the Canons. Our holding in *In*

*re Ross,* 66 Wn.2d 233, 236, 401 P.2d 975 (1965), is pertinent:

> When the Canons of Professional Ethics have been violated, this court has the exclusive function to determine whether to rescind the privilege of practicing law in this state or to suspend it, and, if suspended, to fix the time when and the conditions upon which this privilege may be exercised in the future. The recommendations of the hearing panel and of the Board of Governors are advisory only. *In re Simmons,* 59 Wn.2d 689, 369 P.2d 947 (1962).

Because we disagree with the recommendation made by the board with respect to the first item of the complaint,[1] we quote the board's findings which relate thereto.

I

Early in the year 1965 the respondent, J. B. Pennington undertook the representation of Richard L. Schwender, who resides at Depoe Bay, Oregon, with respect to the settlement of delinquent support money payments allegedly owed by Mr. Schwender to his ex-wife.

II

The respondent received at about that time from Mr. Schwender, $700.00 with the understanding that these funds would be used to settle Mr. Schwender's ex-wife's claim for delinquent child support payments and for the payment of fee to the respondent. There was no agreement as to the amount of fee or how the funds were to be applied.

III

The respondent had some negotiation with the attorney for Mr. Schwender's ex-wife but did not effect any settlement.

IV

The respondent did not deposit the said sum of $700.00, or any part thereof in a trust account but commingled it with his own money and retained it for his own use.

---

[1] A review of 22 of the most recent attorney discipline cases in this court wherein misuse of client's funds was involved disclosed that we have followed the board's recommendation 20 times, lessened the punishment once, and increased the punishment once. In these same 22 cases, disbarment was imposed 17 times, suspension 4 times, and reprimand once.

### V

Mr. Schwender has on many occasions requested the return of the $700.00.

### VI

The respondent admits a present obligation to Mr. Schwender of $530.00. The respondent applied $100.00 upon his fee and $70.00 was forwarded by the respondent to Mr. Schwender a few days before the hearing on this complaint. The respondent has endeavored to borrow funds with which to pay the admitted obligation but has been unable to do so.

### VII

During the first part of the year, 1965, Mr. Schwender was sending respondent checks made payable to Mr. Schwender's ex-wife in the sum of $150.00. These checks were forwarded monthly by the respondent to Mr. Schwender's ex-wife. During the latter part of the year 1965, the respondent apparently failed to forward three checks and as a result the Prosecuting Attorney for Lewis County issued a warrant for the arrest of Mr. Schwender on non-support charges.

### VIII

The mother of Mr. Schwender, upon learning of this, took funds to the Prosecuting Attorney of Lewis County and caused the warrant to be quashed. The respondent apparently had in his possession the three checks which he had failed to forward. There is no evidence that he in any manner had appropriated any of these checks to his own use.

As indicated in the conclusions of the hearing panel as adopted by the Board of Governors, Pennington's conduct constituted violations of Canons 11, 21 and 29 of the Canons of Professional Ethics.

In *In re Hutchins*, 67 Wn.2d 144, 146, 406 P.2d 777 (1965), which involved an attorney who commingled his client's funds with his own, diverted his client's funds to his own use, and was dilatory in properly accounting for them, we held:

> The purpose and objectives of these canons are clear. Strict adherence thereto by all attorneys is essential to maintain and sustain the integrity, honor and public trust of the legal profession. Violations cannot be tolerated. Embezzlement, conversion, refusal or inability to prop-

erly disburse or account for funds entrusted to the care of an attorney begets disbarment. *In re Carroll,* 54 Wn.2d 633, 343 P.2d 1023 (1959). Neglect, delay or procrastination in managing such funds warrant disciplinary action ranging from suspension to disbarment. *In re Ward,* 106 Wash. 147, 179 Pac. 76 (1919); *In re Penland,* 152 Wash. 427, 277 Pac. 1119 (1929); *In re Sampley,* 160 Wash. 92, 294 Pac. 1118 (1930); *In re Hutchinson,* 178 Wash. 112, 33 P.2d 1119 (1934); *In re Smith,* 3 Wn.2d 455, 101 P.2d 311 (1940); *In re Parrish,* 21 Wn.2d 545, 151 P.2d 988 (1944); *In re Park,* 45 Wn.2d 383, 274 P.2d 1006 (1954).

In determining the degree of discipline which is appropriate for a particular violation of the Canons of Professional Ethics, we have held that we must

consider the seriousness and circumstances of the offense and these standards: (1) Punishment of the offender, which should be sufficient to prevent reoccurrence, (2) a penalty sufficient to deter other practitioners from engaging in such conduct, and (3) punishment sufficient to restore and maintain respect for the honor and dignity of the profession, and to assure those who seek the services of attorneys at law that the penalties for unprofessional conduct will be strictly enforced. *In re Simmons,* 59 Wn.2d 689, 706, 369 P.2d 947 (1962).

In applying these considerations to the case at bar, we also must consider the fact that there are few Canons of Professional Ethics more fundamental, more clearly defined, more easily followed, more necessary to promote public trust and confidence in the legal profession, and yet more frequently breached[2] than Canon 11. Further, in determining the appropriateness of the recommended penalty, we cannot overlook the record herein that respondent has previously received a reprimand. Moreover, we have repeatedly held that serious personal problems or other extenuating circumstances which may have caused a violation of the Canons do not constitute an excuse for such violations, and further that restitution and repentence following such violations, while commendable, do not constitute a defense

---

[2]A review of past 10 years' record shows about 35 attorney disciplinary proceedings in this court, of which 17 of them involved misuse of client's funds or property.

to the disciplinary action. *In re Simmons, supra; In re Peterson,* 56 Wn.2d 187, 351 P.2d 533 (1960); *In re Grant,* 4 Wn.2d 617, 104 P.2d 602 (1940); *In re Smith,* 3 Wn.2d 455, 101 P.2d 311 (1940).

■ Although, as indicated, we have in most cases followed the recommendation of the board, we are of the opinion that the gravity of the offense under the first item of this complaint warrants more than a 30-day suspension. It is therefore ordered that J. B. Pennington be suspended from the practice of law in the state of Washington for a period of 6 months on the first item of the complaint, such suspension to commence 10 days after the filing of this opinion. As to the other items of the complaint, the recommendations of the board are approved, including the provision that suspension under items 1 and 3 shall run concurrently.

In accordance with DRA XII A6, we fix the costs and expenses to be paid by respondent attorney at $394.81, being the amount of the Bar Association's statement of costs and expenses.

ALL CONCUR.