[No. C. D. 556.  *En Banc.*  July 22, 1940.]

*In the Matter of the Proceedings for the Disbarment of*
THOMAS A. GRANT.[1]

*S. M. Brackett,* for the board of governors.

*J. H. Stewart,* for respondent.

JEFFERS, J.—This proceeding was instituted by S. M. Brackett, as counsel for the Washington state bar association, by direction of its board of governors, for the disbarment of Thomas S. Grant, of Aberdeen (who will hereinafter be referred to as respondent), an attorney authorized since June 30, 1922, to practice law before the courts of this state.

The record of the hearing before the trial committee, which hearing was held at Aberdeen on March 1, 1940, together with the findings of fact and recommendations of the trial committee, and the record of the review of the proceedings of the trial committee by the board of governors of the Washington state bar

[1]Reported in 104 P. (2d) 602.

association, have been transmitted to this court for our consideration.

The complaint filed herein sets out two causes of action against respondent. Relative to the first cause of action, it appears from the findings of the trial committee, which findings were, after an examination, adopted by the board of governors, and which findings are fully supported by the evidence, that, during the month of March, 1936, Andrew J. Meyers employed respondent, as attorney, to probate the estate of Swan Nelson, deceased; that the heirs entitled to share in this estate were Andrew J. Meyers, W. J. Meyers, and E. J. Meyers, nephews of deceased; that, pursuant to such employment, respondent, on April 8, 1936, procured the appointment of himself as administrator of such estate; that respondent was ordered to file a bond in the sum of five hundred dollars, the value of the estate then being conjectural; that respondent filed and had approved a bond for five hundred dollars, without sureties; that, after respondent's appointment and qualification, there came into his hands securities and bank deposits which were inventoried and appraised at $8,982.85; that no order increasing the administrator's bond was ever entered, and thereafter, on February 21, 1938, an order was entered approving respondent's final account as such administrator and directing distribution of the estate equally between the heirs mentioned.

It further appears from the findings that, according to such final account and order of distribution, claims in the sum of $256.80 had been allowed and ordered paid, and the fees of the administrator fixed at $650; that respondent had in his possession in cash the sum of $1,577.50 and certain securities, among which were 330 Corporate Trust shares, of the appraised value of $907.50, which shares were ordered distributed; that

a copy of the final account was not served upon or sent to Andrew J. Meyers; that, by a supplemental report filed February 4, 1938, respondent reported that he had collected the additional sum of $64.50, making a total of $1,641.05 for distribution.

It also appears from the findings that, subsequent to the entry of the order of distribution, respondent volunteered to procure the transfer of certain stock and securities registered in the name of deceased, and their re-issuance to the heirs; that, during the year 1938, the heirs employed Clarence J. Coleman as their attorney, who, after negotiating with respondent, secured distribution of all the securities save the 330 Corporate Trust shares; that, during the month of November, 1938, respondent sold the Corporate Trust shares, realizing therefrom the sum of $750, and converted the money to his own use; that, contrary to the order of distribution, respondent has failed, neglected and refused to distribute to the heirs the sum of $1,641.05, or any part thereof, save and except that, at the request of counsel for the Washington state bar association, on June 21, 1939, respondent forwarded to the association savings bank book No. 10540 of Seattle First National Bank, upon which the heirs have realized the sum of $69.38.

It further appears from the findings that respondent failed to pay the allowed claims of the estate, and at the time of the filing of the complaint herein was withholding and had converted to his own use funds of the estate, which he was bound by order of court to distribute to claimants and to the heirs, in the sum of $924.88, and that he had failed to distribute and had converted to his own use 330 Corporate Trust shares, upon which he had realized the sum of $750, making a total default of respondent of $1,674.88.

It further appears that, on February 28, 1940, which

was after the filing of the complaint herein, respondent, through Mr. Coleman, made a compromise settlement with the heirs of Swan Nelson, deceased, by the terms of which a cashier's check for one thousand dollars and a promissory note of respondent's cousin for two hundred dollars were delivered to Mr. Coleman; that the settlement was conditioned upon Andrew J. Meyers withdrawing the criminal charge then pending in Grays Harbor county, in which proceeding respondent was charged with embezzlement of the funds of the Swan Nelson estate, but was not conditioned upon the result of the bar proceedings.

Respondent admitted taking the funds of the estate and converting them to his own use, and admitted selling the 330 Corporate Trust shares and converting that money to his own use. Respondent does not contend that his actions are excusable, and the only explanation of his acts was that he had trouble with his leg, resulting from an old injury, and that an operation was necessary; that he did not have the money necessary for this operation, and so used the money taken from the estate, and had been unable to repay it.

The following are the findings made by the trial committee, and approved and adopted by the board of governors, relative to the second cause of action: That, during the month of February, 1933, Twin City Flour & Feed Company, by George T. Sweesy, its president, employed respondent to collect certain moneys from one Mike Reichlin; that pursuant to such employment, respondent commenced an action in Grays Harbor county on behalf of the feed company against Reichlin, and as a result of such proceedings and as the result of a sale of property attached therein, there came into the possession of the clerk of the court $1,283.77; that, upon application of respondent, an order was entered,

June 23, 1933, directing the clerk to deliver these funds to the plaintiff feed company; that, on June 24, 1933, respondent, as attorney for the plaintiff, received and receipted for the sum of $1,283.77.

It further appears from the findings that, at the time such funds were received by respondent, the First National Bank of Montesano was claiming some right to this fund, and by agreement with Mr. Sweesy, respondent was to hold such funds until it was determined whether the plaintiff or the Montesano bank was entitled thereto; that, while such funds were so held by respondent, he converted them to his own use, and up to the time this proceeding was instituted, had failed and refused to pay any part of such funds to the feed company, although it had been determined that the feed company was entitled thereto.

It further appears from the findings that, on February 28, 1940, a compromise was effected between respondent and the feed company, acting through Mr. Sweesy, whereby it was agreed that no complaint would be made by the feed company to the prosecuting attorney of Grays Harbor county on account of the matters referred to herein, and that within ten days respondent would pay to Sweesy the sum of $370, and would also make and deliver to Sweesy a note for an additional $370, payable in one year.

Respondent also admitted taking and converting to his own use the money referred to in the second cause of action, and his only explanation for his so doing was that his mother, who was dependent on him, had sustained an injury which required that she be taken to the hospital and receive medical attention; that he had been unable to repay this money.

Both the trial committee and the board of governors have recommended that respondent be disbarred from the further practice of law in the state of Washington.

■ "The rule relative to the conduct to be observed by an attorney concerning the property of a client which comes into his possession is stated in the canons of professional ethics of the American Bar Association as follows:

" 'The lawyer should refrain from any action whereby for his personal benefit or gain he abuses or takes advantage of the confidence reposed in him by his client.

" 'Money of the client or collected for the client or other trust property coming into the possession of the lawyer should be reported and accounted for promptly, and should not under any circumstances be commingled with his own or be used by him.' 62 Am. Bar Ass'n Reports 1109 (1937)." *In re Smith*, 3 Wn. (2d) 455, 101 P. (2d) 311.

An attorney who uses funds of a client for his own benefit is not excused, even though he may repay or agree to repay such funds before disbarment proceedings against him are concluded.

"The chief consideration is not of a client who has already been offended, but, rather, that the exhibition of that wrong discovers the character of the attorney and his unfitness to be trusted; and, while the payment of the money fraudulently used releases the attorney from civil liability, it is not a purgation of his offense, nor does it prove that he has become a fit person to remain on the rolls." *In re Gowan*, 104 Wash. 166, 176 Pac. 7.

After a careful consideration of this record, we are convinced that the recommendation of the board of governors was entirely justified by the record.

We cannot escape the conclusion that the admitted acts of respondent evidence such a lack of personal honesty and disregard of the duties and obligations of an attorney as to render him unworthy of being permitted to further practice law in the state of Washington.

It is therefore ordered that Thomas S. Grant, respondent herein, be and he is hereby disbarred from the further practice of law in the state of Washington.

ALL CONCUR.