[No. C.D. 5552. En Banc. April 18, 1974.]

*In the Matter of the Disciplinary Proceeding Against*
DON R. SMITH, *an Attorney at Law.*

*Don Smith,* pro se.

*Jack P. Scholfield* and *Jon R. Hunt,* for Bar Association.

HAMILTON, J.—Don R. Smith was admitted to the practice of law in the state of Washington on February 20, 1964. He has at all times since resided in the state and practiced law as an active member of the Washington State Bar Association.

On September 8, 1971, a formal complaint containing two items of alleged unprofessional conduct on the part of Mr. Smith was lodged by the Bar Association. The complaint was amended on January 12, 1972, by adding a third item, and a hearing was scheduled for February 15, 1972, before a duly constituted hearing panel. At the scheduled hearing Mr. Smith appeared in person and was represented by counsel.

The three items of the amended formal complaint revolve about: (1) the settlement of a minor's suit for personal injuries, the commingling of the proceeds of such settlement with Mr. Smith's own funds, and the failure to promptly account for and pay to his client funds to which the client was entitled; (2) failure to promptly pursue, according to his agreement, remedial action on behalf of a client incarcerated in the state reformatory and to refund, as promised, a portion of the attorney's fee received upon behalf of the client's cause; and (3) unreasonable delay in perfecting an appeal in a matter which concerned issues vital to his client's livelihood, necessitating intervention of another attorney, and jeopardizing his client's cause on appeal.

During the course of the hearing, at which Mr. Smith tacitly admitted fault with respect to the items alleged in the complaint, he, through his attorney and by his own testimony, tendered, by way of mitigation, an assignment of a $2,000 attorney's fee due him in another matter for the

purpose of reimbursing the clients involved in items 1 and 2 of the complaint. The assignment read:

> DON R. SMITH hereby assigns to CARSON F. ELLER, to be held by him in trust, the proceeds of the case of Erlene Marcus vs. Aetna Insurance Company.
>
> Said case was arbitrated by Attorney Robert Peterson on February 8, 1972 with a decision of $6,000.00 to be awarded to plaintiff, one-third of which belongs to Don R. Smith on a contingency contract.
>
> This assignment is to insure payment of an indebtedness to Jesse Green Guardian ad Litem for Bill J. Green and Mr. W. B. Lippincott for $250.00.
>
> DATED this 15th day of February, 1972.
>
> /s/Don R. Smith

On March 22, 1972, the hearing panel entered findings of fact, conclusions and recommendations, by the terms of which specific notice was taken of the assignment, and Mr. Smith was found to be in violation of the then Canon of Professional Ethics 11[1] as to item 1 and Canon of Professional Ethics 21[2] as to items 2 and 3. Censure was recommended as to items 1 and 2 and a 30-day suspension as to item 3 of the amended complaint.

On July 17, 1972, the Disciplinary Board of the Bar Association approved and adopted the findings of fact and conclusions of the hearing panel. The Disciplinary Board,

---

[1]"The lawyer should refrain from any action whereby for his personal benefit or gain he abuses or takes advantage of the confidence reposed in him by his client.

"Money of the client or collected for the client or other trust property coming into the possession of the lawyer should be reported and accounted for promptly, and should not under any circumstances be commingled with his own or be used by him." CPE 11.

The Canons of Professional Ethics were, following the violations alleged in items 1, 2, and 3 of the amended formal complaint, superseded by the Code of Professional Responsibility, which became effective January 1, 1972. CPE 11 is now incorporated in CPR 9, DR 9-102.

[2]"It is the duty of the lawyer not only to his client, but also to the courts and to the public to be punctual in attendance, and to be concise and direct in the trial and disposition of causes." CPE 21.

Similar violations would now most likely come within CPR 6 and 7, DR 6-101(A)(3) and DR 7-101(A)(2).

however, rejected the hearing panel's recommendation of censure as to item 1 of the amended complaint and imposed, instead, a 30-day suspension to run concurrently with the 30-day suspension recommended and accepted as to item 3.

The proceeding was then forwarded to this court to be set down for hearing.

In the meantime, it came to the attention of the Bar Association that the clients involved in items 1 and 2 had not been fully reimbursed as contemplated by the assignment of funds proffered by Mr. Smith at the initial hearing. A stay of proceedings in this court was granted and the matter was remanded for a supplemental hearing relative to the alleged default.

The supplemental hearing was held before the original hearing panel on July 9, 1973. Mr. Smith represented himself, his former counsel having withdrawn. Thereafter, on October 4, 1973, the hearing panel entered supplemental findings of fact, supplemental and amended conclusions and amended recommendations. In essence, the hearing panel concluded that Mr. Smith, having received in March 1972, the assigned $2,000 attorney's fee, willfully, deliberately, and in bad faith failed to abide by and comply with the assignment of funds document tendered to the hearing panel at the initial hearing, to the end that it was not until January 11, 1973, that the clients involved in items 1 and 2 were fully reimbursed. In view of such supplemental findings and conclusions, the hearing panel recommended that the initial recommendations as to items 1 and 2 be amended to impose a 90-day suspension to run consecutively to the 30-day suspension initially recommended with respect to item 3. On January 21, 1974, the Disciplinary Board, with one dissenting vote,[3] approved and adopted the supplemental findings, amended conclusions and recommendations of the hearing panel.

The proceedings were again referred to this court, and the matter was set for hearing on March 11, 1974. At the

[3]The dissenting member of the Disciplinary Board strongly advocated disbarment as opposed to suspension.

hearing Mr. Smith appeared and, although he had filed no written brief, was allowed to present oral argument on his own behalf. He was then granted an additional 15 days to submit written argument if he so desired. He did not elect to do so.

We adopt the disciplinary measures approved and accepted by the Disciplinary Board on January 21, 1974.

■■ We have frequently stated that serious consideration will be given by this court to the recommendations of the Disciplinary Board in disciplinary matters. The ultimate responsibility for determining the measure of discipline, nevertheless, rests with and upon this court. *In re Espedal*, 82 Wn.2d 834, 514 P.2d 518 (1973); *In re Kennedy*, 80 Wn.2d 222, 492 P.2d 1364 (1972). We have likewise reiterated the proposition that the basic and underlying purpose of all attorney disciplinary action—be it censure, reprimand, suspension, or disbarment—is for the protection of the public and to preserve confidence in the legal profession as well as the judicial system. *In re Greenlee*, 82 Wn.2d 390, 510 P.2d 1120 (1973); *In re Hawkins*, 81 Wn.2d 504, 503 P.2d 95 (1972); *In re Steinberg*, 44 Wn.2d 707, 269 P.2d 970 (1954).

In making the ultimate determination as to the measure of disciplinary action, we give consideration to: (a) the seriousness and circumstances of the offense, (b) avoidance of repetition, (c) deterrent effect upon others, (d) maintenance of respect for the honor and dignity of the legal profession, and (e) assurance that those who seek legal services will be insulated from unprofessional conduct. *In re Espedal, supra; In re Greenlee, supra; In re Kennedy, supra; In re Pennington*, 73 Wn.2d 601, 440 P.2d 175 (1968).

In the instant proceeding, the evidence presented before the hearing panel on February 15, 1972, and July 9, 1973, amply, if not overwhelmingly, sustains all essential findings of fact and conclusions reached by the hearing panel on each occasion. The findings as well as the evidence adduced clearly demonstrate a very grave lack and misapprehension of professional responsibility on the part of Mr. Smith. His

blatant breach of trust with respect to the clients involved, his attorney to whom the assignment of funds was directed, and the hearing panel project a misguided attitude which, if uncorrected, can only result in ultimate and permanent disbarment. There is, however, some evidence in the record indicating that Mr. Smith, though disorganized in the management of his business affairs, is otherwise a capable attorney and a basically trustworthy individual.

It is upon this latter score that we, upon the charges now before us, refrain from imposing disbarment as recommended by the dissenting member of the Disciplinary Board, and adopt the recommendation of suspension presented by the majority of the Disciplinary Board.

Accordingly, Mr. Smith is, upon the filing of this opinion, immediately suspended from the practice of law in this state for a period of 120 days. The statement of costs filed by the Bar Association is confirmed.

HALE, C.J., and FINLEY, ROSELLINI, HUNTER, STAFFORD, WRIGHT, UTTER, and BRACHTENBACH, JJ., concur.