[No. C.D. 4779.    En Banc.    April 10, 1975.]

*In the Matter of the Disciplinary Proceeding Against* Dino
S. Batali, *an Attorney at Law.*

*Michael E. Jacobsen,* for Bar Association.

Wright, J.—This matter involves the discipline of an attorney at law. Dino S. Batali was admitted to the practice of law in the state of Washington on November 14, 1957. From that date to the present time he has been a member of the Washington State Bar Association. At all times he has resided in Pierce County, and he practiced there until suspension on October 8, 1974.

Item One Of Complaint

On May 19, 1971, Charles E. Sharman and his two sons, David and Mitchell, were injured in an automobile accident. Soon after that date the respondent attorney was employed to represent them in regard to their claims against the driver of the other vehicle involved in the accident, one Michael Reese. The insurance company which carried liability insurance for Mr. Reese ultimately made a settlement.

On approximately July 7, 1972, respondent attorney received a draft in the amount of $15,000 as settlement for the claim of Charles E. Sharman. The draft was payable to "Charles E. Sharman and Dino Batali, his attorney." Soon thereafter the draft was endorsed as follows: "Charles E. Sharman, by his attorney in fact Dino Batali [signed] Dino Batali." Mr. Sharman, to the best of his knowledge, had never signed a power of attorney to respondent attorney.

On July 11, 1972, the draft was deposited in the trust account of respondent attorney. On September 22, 1972, respondent's trust account was overdrawn in the amount of $268.62. In September 1972 respondent issued a check to Mr. Sharman for $900, which check was dishonored by reason of lack of sufficient funds in the trust account. Later respondent issued a check for $950, which was honored in December 1972. Those checks were represented to be Mr. Sharman's share of the settlement, although there was no agreement between respondent and Mr. Sharman relative to respondent's fee. The subject of a fee had not been discussed. Probably, Mr. Sharman should have received nothing; all should have been paid on the medical bills.

Respondent attorney was to pay out of the settlement various medical bills incurred by Mr. Sharman as a result of the accident. The total of said medical bills was $17,396, or considerably more than the total settlement. Respondent attorney never paid any sum whatsoever on any of the said medical bills.

Respondent attorney did send to Mr. Sharman, on one occasion, a photostatic copy of a check made payable to Dr. Thomas Fall of Olympia, Washington. No such check was ever received by Dr. Fall.

Approximately November 27, 1972, was the date respondent attorney received a draft in the sum of $13,000 as settlement on behalf of David Sharman. The draft was payable to the Thurston County Clerk. On approximately November 29, 1972, the draft was negotiated endorsed as follows: "Pay to the order of Dino Batali or Nels B. Nelson, Jr., Teamster's Special Account, Thurston County Clerk, by [signed] Stephen Keller, Deputy." In fact, the draft never reached the office of the Clerk of Thurston County, and there was never a deputy in said office by the name of Stephen Keller. The endorsement was an obvious forgery.

On January 15, 1973, an order approving settlement was filed in the case of David Sharman and Michael Reese, Thurston County Superior Court No. 47590. The order ap-

proved the settlement for $13,000 and provided that respondent attorney was to receive an attorney's fee of $4,301.33. From the balance, $185.17 was for costs; $148 was to reimburse Mr. Charles E. Sharman for payments he had made; $2,923.40 was to pay medical bills and similar expenses; and $5,422.10 was to be deposited in an account for the benefit of David Sharman. On that date respondent attorney did deliver to Mr. Charles E. Sharman, as guardian ad litem for his son David, a check for $5,422.10. That sum was deposited in an account for the benefit of David Sharman.

Respondent attorney retained in his possession funds for payment of medical and related expenses. He never at any time paid any of said expenses and the only payments ever made were by Mr. Charles E. Sharman out of his personal funds. The respondent attorney had repeatedly assured Mr. Sharman that various bills had been paid, but such assurances were wholly false and untrue.

At no time has respondent attorney rendered to Mr. Sharman any accounting, either oral or written, as to the use or disbursement of the funds entrusted to respondent, either in the settlement for Mr. Sharman or in the settlement for David Sharman.

ITEMS TWO AND THREE OF COMPLAINT

Upon motion of the Washington State Bar Association's counsel, the hearing panel dismissed items two and three of the formal complaint.

ITEM ONE OF AMENDED COMPLAINT

On August 15, 1972, Mrs. Helen Burns of Tacoma, Washington, was injured in an automobile accident. Soon after the accident, respondent attorney was retained to represent her in a claim against one Larry Michelson, driver of the other vehicle involved in the accident. In March of 1973 respondent attorney received a settlement of $3,000 for, and on account of, the injuries to Mrs. Burns.

Neither Mrs. Burns nor her husband, Robert Burns, were consulted nor informed relative to the settlement. The draft for settlement was made payable as follows: "Robert Burns

and Helen Burns, husband and wife and Dino Batali, their attorney." On March 28, 1973, the draft was endorsed as follows: "Robert Burns and Helen Burns, husband and wife, by their attorney in fact [signed] Dino Batali." On that date also, the draft was deposited in respondent's trust account. On April 24, 1973, the balance in respondent's trust account was $429.76. Respondent never informed Mr. or Mrs. Burns that he had made a settlement.

In March 1974 Mrs. Burns inquired of respondent as to the progress of her claim and was informed by respondent that settlement negotiations were in progress and that nothing had been accomplished. In fact, the settlement had been consummated about a year before that time, and respondent's statements were wholly false and untrue.

In August 1974 Mr. Burns contacted the insurance company which carried the insurance for the other driver and learned for the first time that a settlement had in fact been made in March of 1973. Soon after that, respondent attorney had a conference with Mr. and Mrs. Burns in his office, at which he asked for more time (until the end of September) to try to work out a settlement. He indicated he would seek a settlement of approximately $12,000 with a net to them of approximately $8,000. At that time he well knew he had settled the entire matter for $3,000 in March of 1973 and that it would be impossible for him to obtain any further or other settlement for them. Mr. and Mrs. Burns reported the matter to the Pierce County Prosecuting Attorney.[1]

Respondent never paid over any sum to Mr. and Mrs. Burns and never gave any accounting for the funds he had received.

ITEM TWO OF AMENDED COMPLAINT

On May 30, 1972, Mr. James A. Davis of Tacoma, Wash-

[1]As a result of the contact with the office of the prosecuting attorney, criminal charges were filed against the respondent. On December 12, 1974, respondent entered pleas of guilty to 5 counts of grand larceny and 1 count of first-degree forgery. The following day, December 13, 1974, respondent was sentenced by the Pierce County Superior Court.

ington, was injured in an automobile accident and he soon thereafter retained respondent attorney to represent him in a claim against one Peter Simonson, driver of the other vehicle involved in the accident. There was a fee agreement for respondent to receive a contingent fee of one-third of the total recovery.

Without knowledge or approval of the client, respondent entered into a settlement for $3,100. A draft was issued on July 30, 1973, in the sum of $3,100 payable as follows: "James A. Davis and Dino Batali, his attorney." The draft was endorsed as follows: "James A. Davis by his attorney in fact Dino Batali [signed] Dino Batali," and was deposited in the trust account of the respondent attorney. On October 4, 1973, respondent's trust account was overdrawn in the amount of $1,541.69.

After the draft had been delivered, representatives of the insurance carrier for Mr. Simonson inquired several times from respondent as to why releases had not been signed by Mr. Davis and delivered to the insurance company. Respondent attorney gave various answers to those inquiries. On October 17, 1974, more than a year later, an agent for the insurance carrier directly contacted Mr. Davis. Mr. Davis, then, for the first time, learned of the settlement. Mr. Davis had not received any of the funds.

CONCLUSION:

On January 14, 1974, a formal complaint and notice to answer was served on the respondent attorney. The complaint initially contained three items.

On September 6, 1974, the disciplinary board recommended that under DRA 9.2 a petition should be filed for an order suspending respondent during the pendency of these proceedings. Argument was heard by this court on October 7, 1974, and on October 8, 1974, an order was entered suspending respondent from the practice of law. On October 15, 1974 an amended complaint was served containing two additional items.

A hearing was held in Tacoma, Washington on October 30, 1974, before a hearing panel consisting of William Church of Vancouver, Washington, a member of the disciplinary board and chairman of the hearing panel, Robert Peterson and Marshall D. Adams, both of Tacoma, Washington. The Washington State Bar Association was represented by Michael E. Jacobsen. Neither respondent nor his attorney appeared before the hearing panel, although they were duly notified of the time and place of the hearing.

The hearing panel found that each of the items of complaint set forth hereinbefore was true and was proved by credible and believable evidence. The misconduct of respondent attorney extended over a period of 2½ years.

The hearing panel further found respondent attorney had flagrantly embezzled funds received on behalf of his clients and had repeatedly and continually misrepresented the status of matters to his clients. The panel found no mitigation or defense.

Respondent attorney has not filed a brief in this court and has not in any way denied or disputed the findings of the hearing panel. The hearing panel recommended disbarment. The disciplinary board agreed with the recommendation of disbarment.

■ We recently said in *In re Deschane*, 84 Wn.2d 514, 516, 527 P.2d 683 (1974):

Lawyers routinely process funds through their trust accounts, aggregating very substantial amounts. Without hesitation, clients and other parties to transactions entrust these funds to lawyers, often without documentation. Confidence in the bar demands that lawyers preserve the integrity of entrusted funds and that lawyers promptly, accurately and fully account for such funds. Virtually all lawyers fulfill these responsibilities. But when these duties are violated it is the court's solemn responsibility to mete out discipline appropriate to the seriousness of the offense.

. . .

Those few lawyers who mishandle trust funds, who fail

to maintain complete records of trust funds and who fail to account and deliver funds as requested are reminded that disbarment is the usual result.

(Citations omitted.) We adhere to that recent pronouncement as it expresses a rule long in effect in this state.

We hereby disbar Dino S. Batali from the practice of law in this state. The clerk is directed to strike his name from the roll of attorneys. We confirm the statement of costs claimed by the bar association.

STAFFORD, C.J., and FINLEY, ROSELLINI, HUNTER, HAMILTON, UTTER, BRACHTENBACH, and HOROWITZ, JJ., concur.