[No. C.D. 4230.    En Banc.    April 29, 1976.]

*In the Matter of the Disciplinary Proceeding Against* NELS B. NELSON, JR., *an Attorney at Law.*

*Douglas C. Baldwin,* for Bar Association.

*Robert Griffin,* for respondent.

HOROWITZ, J.—The Disciplinary Board of the Washington State Bar Association has recommended this court suspend Nels B. Nelson, Jr., from the practice of law for 60 days because of four violations of the Canons of Professional Ethics and the Code of Professional Responsibility.

A complaint of the bar association concerning those violations was served on respondent on January 11, 1975. Respondent did not answer the complaint nor serve nor file any other pleading.

A scheduled hearing was held on June 27, 1975, in Tacoma, Washington, before a member of the disciplinary board. The bar association withdrew count 1. Respondent then orally entered general denials of counts 2 through 5. Sworn testimony was received, and findings of fact, conclusions, and recommendations were duly entered by the examiner. The findings show respondent was admitted to practice law in this state on October 8, 1953; that at all material times he has resided in Tacoma, Washington; and that respondent has had no prior disciplinary action taken against him. The findings, however, deal with four items of misconduct, as next described, which are the basis of the discipline recommended by the examiner. The findings concern each of the following counts involved.

Count 2. In September 1971, Mr. Robert Eubanks consulted respondent regarding a driving while intoxicated charge. Respondent agreed to represent him for $250, $75 to be paid in advance. Mr. Eubanks was to be arraigned on October 6, 1971. He did not appear because respondent had a conflict on the arraignment date. He assured Mr. Eubanks that he would obtain a new court date. Respondent did not obtain a new court date and a bench warrant for the arrest of Mr. Eubanks was issued.

Mr. Eubanks then called respondent who indicated he would have the warrant set aside. The warrant was not set aside and Mr. Eubanks was arrested in February 1972. Numerous court appearances were scheduled for Mr. Eubanks on the DWI charge throughout 1972. On each occasion Mr. Eubanks appeared in court but on no occasion did respondent appear with him notwithstanding respondent had assured Mr. Eubanks that he would do so. Respondent failed consistently to communicate with his client as to any and all proceedings. In the latter part of 1972, Mr. Eubanks

dismissed respondent and retained new counsel. The matter was disposed of in November 1972.

In April 1973, Mr. Eubanks was awarded $202.40 against respondent as a result of his nonappearance and negligent handling of the DWI charge. Despite repeated assurances from respondent that he would pay the judgment, it remained unsatisfied. In attempting to collect the judgment, Mr. Eubanks incurred an additional $108.41 in costs and fees, no part of which has been paid. Respondent indicated that he intended to pay the judgment and additional costs and expenses to Mr. Eubanks within 10 days of the hearing.

Count 3: In the summer of 1972, respondent agreed to represent Mr. and Mrs. George Rae on a contingency basis in a personal injury action. The complaint was filed by respondent in July 1972. The couple advanced respondent $2,500 in five installments for the purpose of having the lawsuit proceed in a diligent manner. Respondent, however, never began the trial and postponed three trial dates. He also delayed 8 months in answering interrogatories, although penciled notes to the answers to interrogatories were promptly returned by Mr. Rae to respondent. The answers to interrogatories filed by respondent consisted of the penciled notes of Mr. Rae. Respondent also consistently failed to adequately and timely communicate with Mr. Rae regarding the status of his case. The client thereafter brought suit against respondent to recover the $2,500 originally advanced on account of fees.

Count 4: In 1967, a claim of Margaret Bogart was dismissed for want of prosecution by respondent. The client sued respondent and his law partner for professional negligence, and recovered a judgment against them of $1,500. Notwithstanding repeated efforts to collect the judgment and assurance from respondent that it would be satisfied, the judgment remains unpaid.

Count 5: In 1966, Mrs. Cora Angelini, who barely understood English and did not read it, paid respondent $2,000 to represent her in an action to recover monies from Mr. Gene Pankey. Mrs. Angelini obtained judgment, Mr. Pankey then

signed an installment note to Angelo Angelini and Cora Angelini for $6,877.50. Mrs. Angelini later moved to Los Angeles, and respondent agreed to forward the money to her when he collected it. Mr. Pankey paid respondent the entire amount of the note between 1968 and 1974.

No account of the payments was ever supplied by respondent to Mrs. Angelini, although she wrote and called respondent on numerous occasions. In April 1975, she journeyed from California to Tacoma to personally ask respondent for an accounting. He thereupon gave her $500, which he claimed was originally retained as an additional fee for collecting the money from Mr. Pankey. In fact, however, there was no such agreement for an additional fee. However, it cannot be determined from the record, even as permissibly supplemented by respondent following the formal hearing, how much of the money collected on the note has been turned over to Mrs. Angelini. The total amount paid is disputed.

The hearing examiner concluded respondent's actions described in each of the four counts constituted neglect of a legal matter entrusted to respondent in violation of (CPR) DR 6-101(A)(3). The examiner further found respondent's actions described in counts 2 and 4 constituted a failure to be punctual in attendance, and to be concise and direct in the trial and disposition of causes in violation of former Canon 21. Lastly, the examiner found respondent's actions described in count 5 constituted a failure to preserve the identity of funds and property of a client in violation of (CPR) DR 9-102(B). There was no finding of fraud. The hearing examiner recommended respondent be censured for his conduct in counts 2 and 4, and reprimanded for his conduct in counts 3 and 5. DRA 5.6(f) and (g). The disciplinary board approved the findings and the disciplinary action so recommended. The board further recommended to this court that pursuant to DRA 10.2(a) (accumulation of discipline), that respondent be suspended from the practice of law for 60 days.

■  This court gives serious consideration to the recom-

mendations for disciplinary action recommended to it by the disciplinary board. The court, however, is not bound by these recommendations. It has "ultimate responsibility for determining the measure of discipline." *In re Smith*, 83 Wn.2d 659, 663, 521 P.2d 212 (1974). That case summarizes the applicable law as follows:

> We have frequently stated that serious consideration will be given by this court to the recommendations of the Disciplinary Board in disciplinary matters. The ultimate responsibility for determining the measure of discipline, nevertheless, rests with and upon this court. *In re Espedal*, 82 Wn.2d 834, 514 P.2d 518 (1973); *In re Kennedy*, 80 Wn.2d 222, 492 P.2d 1364 (1972). We have likewise reiterated the proposition that the basic and underlying purpose of all attorney disciplinary action—be it censure, reprimand, suspension, or disbarment—is for the protection of the public and to preserve confidence in the legal profession as well as the judicial system. *In re Greenlee*, 82 Wn.2d 390, 510 P.2d 1120 (1973); *In re Hawkins*, 81 Wn.2d 504, 503 P.2d 95 (1972); *In re Steinberg*, 44 Wn.2d 707, 269 P.2d 970 (1954).
>
> In making the ultimate determination as to the measure of disciplinary action, we give consideration to: (a) the seriousness and circumstances of the offense, (b) avoidance of repetition, (c) deterrent effect upon others, (d) maintenance of respect for the honor and dignity of the legal profession, and (e) assurance that those who seek legal services will be insulated from unprofessional conduct. *In re Espedal, supra; In re Greenlee, supra; In re Kennedy, supra; In re Pennington*, 73 Wn.2d 601, 440 P.2d 175 (1968).

It should be noted the principal object of bar discipline is to protect the public—not to impose punishment as such. This court, accordingly, must satisfy itself that the disciplinary action it orders is appropriate to accomplish that object based on the particular facts of each case.

> The challenge for this court is to fashion a suitable remedy in each case before us to accomplish these goals and insure that individualized justice is dispensed. The action appropriate in a given case can only be determined by its particular facts and circumstances.

*In re Livesey*, 85 Wn.2d 189, 193, 532 P.2d 274 (1975).

█ We agree with the disciplinary board that the seriousness of the several items of misconduct proved warrants the reprimands and censures ordered. They are deemed accepted by respondent without court action (DRA 5.6(e)) and we need not review their propriety.[1] The matter of suspension is a different matter and requires action by this court. We agree with the disciplinary board that respondent should be suspended from the practice of law. (*See* DRA 6.7). However, the proper discharge of its responsibilities requires this court be reasonably assured that upon the lifting of the 60-day suspension respondent will be fit and able to again practice law in conformity with the Code of Professional Responsibility. It is only if he is so fit and able that his suspension can be lifted without concern that such action will be contrary to the public interest. *Cf.* DRA 8.6(a).

The hearing record as supplemented suggests the need of a further explanation and showing by respondent in two areas: (1) his recovery from severe emotional disorders with a concomitant effect of a total inability to function in the Spring and Fall of 1974 as described in a letter dated April 3, 1975, from respondent's psychiatrist, addressed to the Washington State Bar Association (the letter was introduced in evidence with respondent's approval; the letter stated respondent has been showing improvement since late Fall 1974, is continuing to improve during 1975, and should soon be back to full and normal functioning); (2) nonpayment of outstanding indebtedness actually owing, including judgments, to those who retained respondent's legal services in the matters described in counts 2 through 5 of the complaint.

---

[1] The respondent did not file an answer to the bar association's formal complaint, or any other pleading (DRA 3.1), nor did he file a statement in opposition to the findings, conclusions, and recommendations of the hearing panel (DRA 5.2), or file a written refusal to accept the discipline imposed by the disciplinary board (DRA 5.6(e)), or file a brief to this court. DRA 6.2. Thus, we need not pass upon the censures and reprimands, which are deemed accepted by respondent. DRA 5.6(d) and (e).

A further explanation and showing by respondent is necessary because even as late as oral argument before this court, he has given this court no indication he has made any effort to make restitution to his clients and that there is no longer any need to further pursue his efforts at recovery.

Accordingly, this court imposes a 60-day suspension with a provision it should continue until respondent makes a satisfactory showing of recovery and restitution. As stated· by the Florida Supreme Court in imposing a similar suspension:

> It imposes upon the offending lawyer the responsibility of restoring the confidence of the public as well as the respect of his colleagues in the profession. In other words, the opportunity for reinstatement should stand as a goal to the disciplined lawyer to re-establish himself in the profession.
>
> A mere suspension for a fixed period of time, with the assurance of automatic reinstatement at the end of the prescribed period, does not impose upon the lawyer the responsibility of taking affirmative action during the period of suspension in order to gain readmittance at the end of the period. In other words, readmission being automatic, no burden is placed upon the lawyer to justify his re-entrance by his own conduct.

*State ex rel. Florida Bar v. Ruskin*, 126 So. 2d 142, 144 (Fla. 1961).

A suspension for a fixed period of time, with leave granted to the disciplined attorney to apply for reinstatement thereafter upon a showing that he has been rehabilitated or has made appropriate restitution, is not uncommon. The burden of making such a showing is upon the attorney. *See, e.g., State v. Ruskin, supra; In re Bourgeois,* 25 Ill. 2d 47, 182 N.E.2d 651, 96 A.L.R.2d 735 (1962); *Hoffmann v. New York State Bar Ass'n,* 41 App. Div. 2d 998, 343 N.Y.S.2d 994 (1973); *In re Kaplan,* 13 App. Div. 2d 231, 216 N.Y.S.2d 310 (1961); *cf., In re Sherman,* 58 Wn.2d 1, 10, 354 P.2d 888, 363 P.2d 390 (1960-61). *See also* Annot., 96 A.L.R.2d 739 (1964). In *In re Simmons,* 59 Wn.2d 689,

705-06, 369 P.2d 947 (1962), we recognized that this court has the power to impose this kind of disciplinary action.

> It is exclusively the function of this court, when an attorney has been found to have violated his trust, either to rescind the privilege of practicing law in this state or to suspend it, and, if suspended, to fix *the time when and the conditions upon which the privilege may be exercised in the future.*

(Italics ours.)

The respondent is accordingly suspended from the practice of law for a period of 60 days from the date of the filing of this opinion and thereafter until upon the filing of his petition to have the suspension terminated, he demonstrates to the reasonable satisfaction of the Disciplinary Board of the Washington State Bar Association that (1) he has substantially recovered from his emotional disturbances so as to again be able to practice law in conformity with the Code of Professional Responsibility; (2) he has paid all sums actually owing to those who have sustained loss or damage described in the findings on counts 2 through 5; or upon a showing he is financially unable so to do, has submitted a reasonably satisfactory written plan to the disciplinary board to diligently make such payments;[2] (3) has paid all costs and expenses fixed pursuant to the Discipline Rules for Attorneys as provided by DRA 7.3. The petition to terminate the suspension should be expeditiously considered. The procedure described in DRA 9.1 (d), (e) and (g) shall be adopted for use in the instant case.[3]

The association has filed verified cost bills under DRA 7.1 (disciplinary board expenses) and DRA 7.2 (Supreme

[2]The disciplinary board, rather than the Board of Governors, has very similar responsibilities under DRA 5.6(i), (1).

[3]DRA 9.1(d), (e) and (g), although enacted to apply to the reinstatement of an attorney suspended for conviction of a felony may be adapted for use in the instant case. DRA 9.1(d) provides that upon the filing of a petition for reinstatement by an attorney suspended for conviction of a felony the disciplinary board may order an investigation and report on the petition. DRA 9.1(e) makes provision for a hearing on the petition by the disciplinary board. DRA 9.1(g), *inter alia*, provides for final disposition by the Supreme Court.

Court expenses within 10 days after hearing.) Respondent has filed no exceptions to either cost bill. The association has since reduced its claim for attorneys fees in this court. DRA 7.2(c) requires the judgment of this court in disciplinary proceedings to fix the taxable costs and expenses in this court. Accordingly, the amount is fixed in favor of the association on the basis of the association's last cost bill; namely, $509.02.

It is so ordered.

STAFFORD, C.J., HUNTER, HAMILTON, WRIGHT, UTTER, and BRACHTENBACH, JJ., and McMULLEN, J. Pro Tem., concur.