[No. C.D. 4823.   En Banc.   January 5, 1979.]

*In the Matter of the Disciplinary Proceeding
Against* WILLIAM O. KUMBERA, *an
Attorney at Law.*

*Leland G. Ripley,* for Bar Association.

*William O. Kumbera,* pro se, and *William S. Howard,* for
respondent.

UTTER, J.—The respondent, William O. Kumbera, an attorney admitted to practice in this state in 1958, was referred to the Disciplinary Board of the Washington State Bar Association for acts involving misuse of his clients' funds and commingling of his own funds with those of his clients. The board, with two members dissenting, recommended he be suspended from practice for 3 years. He does not contest the findings of fact or conclusions of the disciplinary board, but rather only challenges the recommendation as too severe. We hold the suspension should be for a period of 1 year and that costs, as indicated later, should be assessed against the respondent.

The respondent is charged with three counts of misconduct. The first relates to a sum of approximately $2,550 placed in his trust in early 1975 by Mrs. Geraldine Henriksen, who together with her husband were personal friends as well as business clients of the respondent and his wife. The respondent was instructed to disburse these funds in small monthly payments to Mrs. Henriksen's daughter. Seven hundred dollars was thereupon given to the daughter, and another $500 returned to Mrs. Henriksen, leaving a balance of $1,350 due the client. The respondent's wife operated a small store from which, in December 1975, Mrs. Henriksen purchased approximately $400 in clothes. The respondent set off this commercial obligation against the amount owing to Mrs. Henriksen. By the end of 1975 the respondent's trust account failed to contain even the $950 still owing the client. In mid–1976, the $950 was repaid in full to Mrs. Henriksen. The disciplinary board found that prior to this time the respondent had improperly applied these trust funds to his personal needs.

The second count concerns $2,500 received by the respondent in January 1977, to be held in trust as proceeds from the sale of real property. The sum of $1,000 from these funds was to be paid in February 1977 to Mr. Duane Einen. This money was not paid until May 1977, and respondent's trust account contained insufficient funds during March and April to make the required payment.

The third count concerns incidents occurring during the period of 1975 through June 1, 1977. Mr. Kumbera used his trust account to shield his personal funds from the reach of his personal creditors. As indicated above, during this same interval the trust account did not contain sufficient funds to cover moneys deposited on behalf of clients, and respondent used clients' moneys at various times for his personal needs.

When lawyers use clients' funds for their own personal use, mishandle trust funds, and fail to account and deliver trust funds as requested, disbarment is the usual result. *In re Deschane*, 84 Wn.2d 514, 527 P.2d 683 (1974); *In re Batali*, 85 Wn.2d 246, 533 P.2d 843 (1975). The disciplinary board recognized this was the usual sanction applied but believed there were mitigating facts and circumstances present. They noted that respondent had no prior discipline during approximately 17 years of legal practice. He and his wife faced financial problems associated with his practice and the store his wife was managing. In addition, respondent had become addicted to alcohol, and had more recently overcome his addiction through voluntary participation in an alcoholism treatment program. In the Henriksen matter the board also found a definite lack of full understanding by the attorney and client as to the terms of the trust relationship and noted an informal relationship existed between the parties. In light of these circumstances, the majority of the board recommended suspension from the practice of law for 3 years and two dissenting members, including the chairman, recommended suspension for only 1 year. Costs were also awarded to the bar association in the amount of $2,829.52.

The determination of proper standards for imposition of discipline has been the subject of much discussion. We have consistently held that whether the discipline consists of censure, suspension or disbarment, there are two purposes to be served by its imposition—protection of the public and preservation of confidence in the legal profession and judicial system. *In re Smith*, 83 Wn.2d 659, 663, 521

P.2d 212 (1974). *Accord, In re Lavery,* 90 Wn.2d 463, 467, 583 P.2d 1210 (1978); *In re Nelson,* 87 Wn.2d 77, 81, 549 P.2d 21 (1976); *In re Livesey,* 85 Wn.2d 189, 193, 532 P.2d 274 (1975). Yet, citation of these purposes does not determine the discipline appropriate to a particular case.

Recently, the Joint Committee on Professional Discipline of the Appellate Judges' Conference and the Standing Committee on Professional Discipline of the American Bar Association have published a tentative draft of Standards for Lawyer Disciplinary and Disability Proceedings (June, 1978). Paragraph 7.1 of the draft, at page 44, sets forth a standard for individualized discipline: "The discipline to be imposed should depend upon the specific facts and circumstances of the case, should be fashioned in light of the purpose of lawyer discipline, and may take into account aggravating or mitigating circumstances."

█ This standard conforms to that which we have adopted in our own review of disciplinary cases. We have noted generally that disciplinary action in a specific case is determined by the facts and circumstances of the case. *In re Greiner,* 61 Wn.2d 306, 309, 378 P.2d 456 (1963). More particularly, to fairly affect the purposes of attorney discipline, we held in *In re Smith, supra* at 663, that in determining the nature and extent of disciplinary action, we consider "(a) the seriousness and circumstances of the offense, (b) avoidance of repetition, (c) deterrent effect upon others, (d) maintenance of respect for the honor and dignity of the legal profession, and (e) assurance that those who seek legal services will be insulated from unprofessional conduct." *Accord, In re Caplinger,* 89 Wn.2d 828, 576 P.2d 48 (1978); *In re Livesey, supra.*

Mirroring our own analysis, the commentary to the committee's proposed standard 7.1, *supra* at 44, cites our views expressed in *In re Smith, supra,* and calls for a flexible approach to disciplinary action.

> The nature and degree of discipline to be imposed should be determined on a case by case basis, after consideration of all relevant factors. *Bernstein v. State Bar,*

6 Cal.3d 909, 495 P.2d 1289 (1972); *In re Dedman,* 17 Cal.3d 229, 131 Cal. Rptr. 379, 550 P.2d 1040 (1976). The court should avoid adoption of rules that mandate dispositions for certain forms of misconduct. Fixed penalties limit the court's ability to deal with the complexity and variety of circumstances involved in each matter.

The commentary also notes the circumstances which may aggravate or mitigate misconduct, demonstrating greater or lesser discipline is required to protect the public and the profession from further injury. More severe discipline may be necessary, for instance, where the respondent demonstrates a lack of remorse, fails to cooperate with an authorized investigation, to voluntarily make restitution to those injured, to acknowledge and recognize the seriousness of the violation and breach of trust, or where a record of prior discipline demonstrates a pattern of conduct resistant to efforts at rehabilitation. On the other hand, where a respondent demonstrates "a willingness to rectify the damage caused by the misconduct, contrition, inexperience, [or] temporary mental aberrations for which the respondent has sought treatment, and restitution prior to the filing of a grievance," the court may determine a less severe degree of discipline will best satisfy the public interest.

Thus, while restitution, repentance, and temporary personal disabilities may not excuse breach of the disciplinary rules, *In re Pennington,* 73 Wn.2d 601, 606–07, 440 P.2d 175 (1968), they are relevant in considering the proper discipline to be imposed.

The uncontested findings of the disciplinary board demonstrate serious misconduct on the part of the respondent. Yet most of the factors which cause a court to be lenient are present in this case. The respondent has demonstrated contrition and a willingness to rectify the damage done by his misconduct. Indeed he has already made full restitution to the affected client. He has sought and received treatment for his alcoholism, which no longer appears to be a problem. Finally, in recognition of the seriousness of the charges against him, he has voluntarily abstained from accepting

new responsibilities in his practice pending resolution of his case before the court. These factors lead us to believe the public and profession will be best served by imposition of the discipline recommended by the dissenting members of the board.

We have examined the costs submitted by the bar association. While we are concerned about their apparent unwillingness to concur in the respondent's desire to have depositions and hearings conducted in Seattle, we cannot say the costs imposed are entirely unreasonable. Nonetheless, given the nature of this case we conclude a moderate adjustment in the amount of the award is appropriate.

The respondent will be admitted to practice 1 year after the date of filing of this opinion. Costs in the amount of $2,329.52 are assessed against the respondent, the assessment to be paid before the respondent returns to practice.

ROSELLINI, HAMILTON, HOROWITZ, DOLLIVER, and HICKS, JJ., concur.

WRIGHT, C.J. (dissenting)—I dissent. I agree in principle with the majority in saying "'The discipline to be imposed should depend upon the specific facts and circumstances of the case, should be fashioned in light of the purpose of lawyer discipline, and may take into account aggravating or mitigating circumstances.'" This, however, is not a case wherein the circumstances would justify leniency.

The respondent did commingle funds received by him in trust with personal funds, and he did convert trust funds to his own use. It seems to be some excuse that he only stole from friends. In *In re Cary*, 90 Wn.2d 762, 585 P.2d 1161 (1978), we specifically rejected a contention under similar circumstances that it was somehow different if the respondent therein stole only from his sisters. We said, in part, at page 765: "Respondent's familial relation . . . does not alter the ethical standards and responsibilities which he, as an attorney, was sworn to uphold." We ordered disbarment. May we ask, is it less wrong to steal from friends?

The majority also takes note of the fact that the funds were ultimately repaid. On numerous occasions we have rejected that as an excuse. In *In re Grant,* 4 Wn.2d 617, 622, 104 P.2d 602 (1940), we said, in part: "An attorney who uses funds of a client for his own benefit is not excused, even though he may repay or agree to repay such funds before disbarment proceedings against him are concluded." Further, at page 622, quoting from *In re Gowan,* 104 Wash. 166, 176 P. 7 (1918), we said:

"The chief consideration is not of a client who has already been offended, but, rather, that the exhibition of that wrong discovers the character of the attorney and his unfitness to be trusted; and, while the payment of the money fraudulently used releases the attorney from civil liability, it is not a purgation of his offense, nor does it prove that he has become a fit person to remain on the rolls."

(Citation omitted.)

In *In re Batali,* 85 Wn.2d 246, 251, 533 P.2d 843 (1975), we said:

We recently said in *In re Deschane,* 84 Wn.2d 514, 516, 527 P.2d 683 (1974):

Lawyers routinely process funds through their trust accounts, aggregating very substantial amounts. Without hesitation, clients and other parties to transactions entrust these funds to lawyers, often without documentation. Confidence in the bar demands that lawyers preserve the integrity of entrusted funds and that lawyers promptly, accurately and fully account for such funds. Virtually all lawyers fulfill these responsibilities. But when these duties are violated it is the court's solemn responsibility to mete out discipline appropriate to the seriousness of the offense.

. . .

Those few lawyers who mishandle trust funds, who fail to maintain complete records of trust funds and who fail to account and deliver funds as requested are reminded that disbarment is the usual result.

(Citations omitted.) We adhere to that recent pronouncement as it expresses a rule long in effect in this state.

408

The same result has been reached in even more recent cases. *See In re Robinson,* 89 Wn.2d 519, 573 P.2d 784 (1978); *In re Gibson,* 90 Wn.2d 440, 583 P.2d 633 (1978).

It is unthinkable that this respondent can escape disbarment. I would most certainly disbar.

STAFFORD and BRACHTENBACH, JJ., concur with WRIGHT, C.J.