[No. C.D. 3378.   En Banc.   September 4, 1980.]

*In the Matter of the Disciplinary Proceeding Against* GEORGE LIVESEY, JR., *an Attorney at Law.*

*George Livesey, Jr.,* pro se, and *Paul N. Luvera, Jr.,* for petitioner.

*Kurt M. Bulmer,* for Bar Association.

HICKS, J.—Petitioner George Livesey, Jr., was admitted to the Washington State Bar Association in 1949. He was suspended from the practice of law for 1 year in 1975. *In re Livesey,* 85 Wn.2d 189, 532 P.2d 274 (1975). Subsequently, by order dated September 9, 1977, this court continued the suspension to permit petitioner to undergo psychiatric evaluation and treatment. Petitioner now seeks, and the Board of Governors recommends, his reinstatement to the bar of this state.

The events leading to petitioner's suspension essentially involved failure to process several cases and then, upon inquiry by a client concerning the status of a particular matter, to falsely respond that it was proceeding satisfactorily. The details are set forth in *Livesey* and need not be recounted here.

Petitioner's difficulties arose from a combination of factors including an extremely busy practice and a personality aberration which results in impulsive thinking. As noted in *Livesey,* the personality problems appeared curable or controllable through psychiatric treatment. Suspension was the disciplinary sanction of choice (DRA 1.2) in order to give

petitioner an opportunity to display the motivation and take the steps necessary for recovery.

Following his suspension, it was ultimately discovered that petitioner was using alcohol to an extent which exacerbated his impulsive thinking. The unsuspected alcohol problem went undiscovered by the treating professional for a considerable period of time. The use of alcohol impaired the ability of petitioner to cooperate in the psychiatric program he was undergoing and the treatment did not produce the positive results anticipated. We continued petitioner's suspension, though not without protest on the part of some members of the court who felt that a more drastic measure was mandated.

■ Since April of 1978, following discovery and treatment of his alcohol problem, petitioner appears to have made a remarkable recovery. In the opinion of the Board of Governors of the bar association, petitioner has sufficiently demonstrated that he has overcome the weaknesses that produced the earlier difficulties requiring his suspension. *See In re Johnson,* 92 Wn.2d 349, 597 P.2d 113 (1979) (involving a more serious sanction of disbarment).

In October of 1979, the treating psychiatrist reported petitioner had recovered from his drinking problem and had completely abstained from the use of alcohol since April of 1978. Petitioner shows no signs of returning to his former habits. The doctor further stated that because alcohol was no longer a problem, he expected no difficulties from petitioner's now "under control personality". The doctor concluded that petitioner had recovered and further treatment was not indicated. Petitioner's family physician, who had discovered and treated the alcohol problem, testified to the same effect as the psychiatrist.

In addition to the medical testimony, we have been furnished numerous letters from both professional and nonprofessional persons, who reside in the community and are in a position to know, all attesting to petitioner's dramatic physical and mental improvement. Upon a review of the entire record, we concur with the Board of Governors that

petitioner has met favorably all criteria required in *Johnson* for reinstatement.

■ The Board of Governors was of the opinion that because of his lengthy suspension petitioner should redemonstrate his proficiency in the law by taking and passing the state bar examination before final reinstatement to practice. Unlike a disbarred attorney, the reinstatement of an attorney suspended from the practice of law is not conditioned upon his successfully retaking the bar examination. *See In re Nelson*, 87 Wn.2d 77, 549 P.2d 21 (1976); *cf.* DRA 8.7(a). This, however, is an unusual case in that the term of suspension extended far beyond any period that might be characterized as "normal". Nonetheless, after thorough consideration, we have determined that again demonstrating proficiency in the law through a bar examination as a condition to reinstatement is not mandated in this instance.

Prior to the onset of his problem, petitioner was accorded the highest rating in Martindale–Hubbell Law Directory. This rating reflects the views of petitioner's fellow practitioners in the community as to his legal ability. Petitioner's problem did not result from either lack of legal expertise or basic ethics. Rather, during his 25 years of practice prior to suspension, he had built a reputation as an "excellent" attorney. Except for the matters which resulted in his suspension, the ethical standards petitioner observed during those years were "exemplary". Even following his downturn, petitioner on occasion expended substantial amounts of his own funds to prevent client loss resulting from his problem.

Petitioner assures us that he has kept abreast of changes in the law through a self–imposed course of study. We trust this to be true. Nonetheless, we impose upon petitioner the burden of completing 45 hours of approved continuing legal education courses in each of the next 2 years.

We are satisfied that petitioner can again carry on a practice that will reflect the high principles of the legal profession and that his reinstatement will be in the public

interest. Immediate reinstatement of petitioner to the practice of law in this state is deemed appropriate in this instance.

It is so ordered.

UTTER, C.J., ROSELLINI, WRIGHT, BRACHTENBACH, HOROWITZ, DOLLIVER, and WILLIAMS, JJ., and BUCKLEY, J. Pro Tem., concur.